THE MAYOR, ETC., OF ROME *vs.* MCWILLIAMS *et al.*

1. At common law the right to fit up a building for city purposes and to provide suitable accommodations for the transaction of the business of the city, is a necessary incident to the administration of every municipality; and expenses incurred for that purpose may be ranked as necessary expenses.

2. By the act of 1874 extraordinary expenses are defined to be those incurred for paving or macadamizing the streets, for educational purposes, and for paying the public debt; all other expenses of municipal corporations are classed as ordinary current expenses; and the tax to cover the latter class is limited to one-half of one per cent., unless increased under authority of a vote of two-thirds of the legal voters.

3. A municipal corporation may expend a portion of the tax lawfully raised for ordinary expenses in fitting up necessary municipal offices, due regard being had to the retention of a sufficiency for the payment of salaries and other like essentials to the conducting of municipal government.

4. Where a tax has been levied by a municipal corporation sufficient to cover an anticipated expenditure for city offices or the like, it is not necessary to delay taking any steps towards securing such improvements until the money is actually in the treasury. To have work done and pay for it at its completion, or by installments during

its progress, having the money ready when the time of payment arrives, is not to incur a debt within the meaning of the constitutional prohibition on that subject.

CRAWFORD, J., dissenting.

Municipal Corporations. Tax. Before Judge UNDERWOOD. Floyd County. At Chambers. June 28th, 1881.

Reported in the decision.

J. BRANHAM, for plaintiffs in error.

ALEXANDER & WRIGHT; C. ROWELL, for defendants.

SPEER, Justice.

The plaintiff in error, by its tax ordinance of 1881, levied three-fourths of one per cent. to pay interest on the bonds issued under the compromise act of 1876. To this levy complainants made no objection.

By the second section of the ordinance there was levied a tax of three-eights of one per cent. on all the taxable property of the city for current expenses for 1881, and for providing funds for the erection of a suitable building for police headquarters, council chamber, court-room, clerk's office, town-hall, and Mountain City engine house.

The defendants in error filed their bill to enjoin the collection of this last named tax, and especially so much thereof as was intended for the erection of the building referred to in said section, until plaintiff in error had first obtained authority from the legislature and the approval of the voters of the city of Rome.

By their bill complainants allege,

(1.) They are tay-payers of said city, and that the taxable property of the city amounts to $2,200,000.00.

(2.) That the bonded indebtedness of the city is $300,-000.00, more than ten per cent. upon the taxable property of the city.

v 67—8

(3.) That of the levy of three-eights of one per cent. it does not appear how much was to be used in the erection of the building referred to.

(4.) That it is unlawful under the act of 28th February, 1874, to levy a tax for erecting the building referred to without first obtaining the approval of two-thirds of the legal voters of the city at an election to be held for that purpose.

(5.) That the ninth section of the act of 28th February, 1875, under which the bonds now outstanding were issued, except a small amount, prohibits the city from contracting any other debt so long as these bonds are unpaid.

(6.) That the levy of so much of said three-eights of one per cent., as is intended for the erection of the buildings, is in conflict with the seventh section of the seventh article of the constitution of 1877, the substance of which is set out in the bill. The bill also charges that this part of the ordinance involves the necessity for contracting a new debt, which forms no part of the current expenses of the city.

The plaintiff in error answered the bill, admitted the amount of taxable property and bonded debt as stated by complainants were correct.

That the city had been the owner of the *second story* of a brick building built before the war, and then suitable for the limited wants of the city. That then the police force consisted of one marshall. Public records were few. The lower story was owned and occupied by private persons who also owned the ground. That this hall, owing to the increase of the business of the city, its records, etc., was not adapted to its necessities—had no vault, and none could be built therein, and one was imperatively necessary for the preservation of the records, bonds and other papers. It contained no room for marshal's, treasurer's, or clerk's office, or police headquarters. Under these circumstances the city deemed it advisable to sell, and had sold the hall to the owners of the ground for

two thousand dollars, and the city now has no place to hold its police court, no clerk's, treasurer's or marshal's office, no vault for its papers, nor any engine-house for the company named. The levy of one-eighth of one per cent. was levied to supply these absolute wants of the city. That it proposes to buy a lot of Webb, 58x165 feet, offered for $2,000.00 with the proceeds of the sale of the hall, which is suitable for the purposes intended, and to expend on said lot the sum raised by the said levy to the extent of one-eighth of one per cent. in erecting said building. Plaintiff in error does not propose to go in debt one dollar. Enough would be raised by the levy of one-eighth per cent. to erect so much of said building as would be necessary for the business of the city without incurring any debt. A clerk's office and vault, a suitable room for mayor's office, and a small room for the engine are absolute necessities.

The city now pays annually a rental of $265.00 for a room for the fire-engine, and the other rooms, if to be rented, would cost double, and no place for city records of safety provided. They believe the levy is approved by a large majority of the citizens, and the measures are made necessary by the increase of population and growth of the city. That the interest on their public debt due in July is provided for and forwarded to New York. The answer further sets forth that the levy of three-eights of one per cent. was ordered for the purposes stated in the bill. That the police headquarters, council chamber, court room and hall, will at present consist of but one room, which will be used for all the purposes named. Two other small and inexpensive rooms for a clerk's office and engine house will be attached thereto, and plaintiff in error claims that all this is necessary to the administration of the city affairs and incidental to the government thereof, and the expenses to be incurred on this account are properly embraced within the ordinary and necessary expenses of the city. Plaintiff in

error claims that the power to levy taxes to pay the bonded debt and interest thereon is only limited by the necessities of the case.   The act of 1874 only restricts the power of levy and the levy for the purposes named, is within the limit mentioned in said act, and constitutional.

On hearing the bill and answer, the court enjoined the collection of one-eighth of the rate levied in the second section of the ordinance, and defendants below excepted.

The levy of this tax of one-eighth of one per cent. is resisted on the ground,

(1.) That by the act of 28th February, 1874, one-half of one per cent. is the maximum limit of taxation for the *ordinary current expenses* of all municipal governments in this state (except the city of Savannah), and this proposed improvement cannot be made from that fund.

(2.) That by the act of 28th February 1876, the mayor and council of Rome (since the bonding of their debt) "are prohibited to issue bonds other than those herein provided for, or to *contract any other debt except for current expenses*, so long as said bonds remain unpaid." Act of 1876, 192.

(3.) That the seventh section of the seventh article of the constitution of this state declares : "The debt hereafter incurred by any county, municipal corporation or political division of this state, except as in this constitution provided, shall never exceed seven per centum of all the assessed value of all the taxable property therein without the assent of two-thirds of the qualified voters," etc.

Let us first enquire what are the powers conferred on this corporation by its charter as to the levy of taxes, and second, how are those powers limited or restricted by the acts of 1874 and 1876 and the seventh section and seventh article of the constitution?

It is very clear by the act of 1869, pages 87 and 88, section four, that authority to tax was conferred upon the city of Rome by the amendment of its charter in this act.

Section four of that act reads: "Be it further enacted, that fully to subserve the interest of said city said mayor and council may impose and collect a tax not exceeding *three-fourths* of one per cent. upon all the real and personal property of said city, which is, by the laws of this state, subject to taxation, to be collected at such time and in such manner as said mayor and council may direct."

In addition to this grant to the said mayor and council, when the city, in 1876, applied for authority to the legislature to enable her "to adjust and settle her bonded debt," an act was passed 28th February, 1876, "to authorize and empower the mayor and council to adjust and settle the present bonded debt of the city and provide for the payment of the same."

By the second section of this act it is provided when the bonds are issued, "It shall be the duty of said mayor and council to *provide by taxation* for the prompt, sure and speedy payment of said bonds, together with the interest, as soon as the same shall become due."

It is not denied, as we understand it, that here is a special power in the city to levy and collect taxes without limit to pay these bonds with interest as they fall due. But plaintiff in error does not rely upon this source of taxing power to justify this levy here complained of.

How then is the power under the fourth section of the act of 1869 limited or restricted by the act of 1874 or the constitution as quoted?

The act of 1874 is entitled "An act to *limit* and *regulate* the assessment and collection of taxes by municipal authorities in this state, except as far as relates to the city of Savannah."

The first section declares that from the passage of the act "it shall be unlawful for the authorities of any municipal corporation in this state to levy or collect for the *ordinary current expenses of said corporation*, except as hereinafter provided, any *ad valorem* tax upon the property within said corporation exceeding one-half of one

per cent. upon the value of said property, any law of this state or charter of said corporation to the contrary notwithstanding."

It is very clear that it was the purpose of the act to limit the ordinary current expenses of the municipalities to a sum to be raised by the levy of a tax not exceeding one-half of one per cent. *ad valorem* on the property. This levy can be made without a vote, but as it was possible an emergency might arise when one-half of one per cent. might not be sufficient to meet these "ordinary current expenses," the act in the fourth section wisely provided, if this should be so, "that an *additional tax* may be levied for this purpose when the same shall be authorized by a vote of two-thirds of the legal voters," etc., and this additional tax, when so authorized, is without limit as to amount.

The act of 1874 intended and did class all municipal expenditures under two distinct heads, one called "ordinary current," and the other "extraordinary expenses." Extraordinary is defined to include expenses for education, for paving and macadamizing streets, for payment of the public debt. *All others are defined* to be *ordinary current* expenses, and to meet which the municipality is limited to a levy of one-half of one per cent., unless, as provided for, its increase is authorized by a vote of two-thirds of the legal voters thereof.

Under what class of expenditures does the construction of town halls, markets, engine houses, etc., fall? Apart from the act of 1874 we think at common law it has been pretty well settled that such expenditures are a necessary incident to the existence of a corporation, and are to be provided for as a part of the ordinary current expenses of the municipality. The rule is a corporation of this kind may exercise any power conferred upon it by charter or such as are necessary to the exercise of their corporate duties and the accomplishment of the purposes of their association. 23 Pick., 74.

Cities and towns, by virtue of their general powers, have authority in their respective capacities to build a market-house, to appropriate money therefor, and to assess the same upon the inhabitants. 23 Pick., 71. So in the erection of public buildings for the accommodation of the inhabitants and municipal authorities, such as town houses to assemble in, and market houses for the sale of provisions, may also be a proper town charge, and may come within the fair meaning of the term "neces-, sary expenses," for these may be essential to the comfort and convenience of its citizens and the due, safe and systematic administration of its government. 13 Mass., 279. So they have the authority to levy taxes and assess money upon the inhabitants, under their charters, usually for such purposes as may be necessary to enable them to enjoy the privileges and perform the duties established by law. 13 Pickering, 229; 13 Mass., 279; 19 Pick., 487.

The right to fit up a building for city or public purposes and provide suitable accommodations for the transaction of the business of the city is a necessary incident to the administration of every municipality. 4 Cal. Rep., 9.

But we need not look to the common law for the definition of these terms. Sufficient is it to say that the act of 1874, passed for the purpose of limiting and regulating the imposition and disbursement of municipal taxes, has defined what *"extraordinary" expenses* are and leaves *all others* to be classed as "ordinary current expenses;" and under this classification the erection of a town hall, with its conveniences for the city government, engine-houses, etc., belong to, and are to be regarded as a part of, the "ordinary current" expenses of the city. We appreciate the wisdom of the legislature in seeking to limit and properly regulate this subject of taxes and expenses that have borne so heavily upon many of our cities and towns, when the great object sought to be attained is to economize the municipal funds and lessen these city burthens;

and we recognize that we are carrying out and giving ai d and support to this wise policy in restricting *all expendi- tures of every character* that we are not defined to be extraordinary under the act, "to be limited to the levy of one-half of one per cent. *ad valorem* on the taxable property of the city, unless this limit is allowed to be in- creased by a vote of two-thirds of the legal voters."

It has heretofore been usually understood that "ordi⁻ nary current expenses " mean those *annual* expenses at- tending the administration of the city govⱺrnment that are expended and consumed in payment of salaries and those temporary expenditures in the way of repairs, etc. that appertain to .the city, its streets, bridges, culverts, etc. But we do not so understand or interpret the act of 1874. *All the expenses and disbursements of the city of every kind* except for paving or macadamizing the streets, education, and payment of the public debt, are classed as "ordinary current expenses," and have to be met from the taxes levied *for that purpose*, and it follows that the city council can appropriate a portion of this tax thus raised to the erection or repair of public buildings which are necessary and essential to the administration of the city government as readily as they.can bridge a chasm in their streets or build a culvert. This construction of the act will only tend the more strongly to economize and reduce the annual expenses of a city government in the way of appropriations for its annual support, when it is understood that from this tax limit of one-half of one per cent., not only have these annual expenses to be met, but also all improvements not classed as extraordinary, from the planting of a shade tree to the erection of a city hall. The legislature did not intend that the munic- ipal governments should expend the tax thus limited alone in the annual support of the city government, but in other improvements of. the city, such as furnish necessary conveniences to its authorities and the public, secure safety to its records, peace and protection to its population, and

security to property against conflagrations. Our judgment therefore is that when a tax is levied within the limit as prescribed by law for the ordinary current expenses of the city, the city authorities have, in their discretion, authority to appropriate such portion of said tax levied to construct or repair its public buildings that the *necessities* and *wants* of the municipal government *may demand*, having proper and due regard, of course, for those annual expenditures which are necessary to keep the city government in operation.

Neither do we think the prohibition in the act of 1876, against the city of Rome contracting any indebtedness until the bonded debt is paid, nor the prohibition in the constitution, are any restraint upon the proposed action of the city council. The answer emphatically denies any purpose or intent on the part of the corporation to contract a debt in the improvements proposed to be made. This is made manifest by their action in levying and seeking to collect this tax to meet the expenses incurred. We do not think it is necessary to await the payment of the taxes in the city treasury before the city would be authorized to initiate its plan for expenditure.

An obligation arising under a contract on the part of a municipal corporation to pay for work when and as it shall be performed *in the future*, does not constitute or ripen into an indebtedness within the meaning of the constitution till at least the performance of the work. 27 Iowa, 228; 17 N. Y., 110.

If this were not so, then it would be impossible, in a majority of instances, to even contract for the most necessary public building without a prior levy and deposit of money in the treasury. The obligation to pay so far as the *time* of its inception as between the parties is concerned, is one thing, and an actual *indebtedness* within the meaning of the constitution is another. I may enter into a contract for an architect to build me a house, but if he never does the work I owe him nothing; so if I pay him

as he progresses, I will not be his debtor; so if I contract to pay him when the work is done, I owe him nothing till the contract is fulfilled, and if on its fulfillment I discharge it, I cannot be said to have incurred a debt in the sense the constitution prohibits corporations from incurring. And it must be remembered, also, that the act of 1876, which lays a prohibition upon this corporation against incurring a debt until these bonds are paid except debts incurred "for current expenses." So likewise the prohibition imposed by the constitution on municipalities against incurring debts where they amount to seven per cent. on the property value, also provides that such new debt may be incurred by temporary loans to supply casual deficiencies of the revenue.

Concluding, as a majority of this court have done, that the improvements proposed to be made by the council must be paid for as part of the ordinary current expenses of the city, and from the taxes raised for that purpose, we think the court below erred in enjoining the levy and collection of that portion of the tax designed to meet this expenditure as the *whole tax* levied for such ordinary current expenses does not exceed the half of one per cent. · Let the judgment of the court below be reversed.

JACKSON, Chief Justice, concurring.

I concur in the judgment of reversal for the reasons expressed in the opinion of my colleague.

I wish simply to add that the case of the city of Marietta, reported in 64 *Ga.*, 286, differs from this in that in the former case a debt of $3,000.00 was contracted by that city, and it was so admitted, whilst in this case, it was denied in the answer most explicitly that any debt had been, or would be, created, but that the money would be on hand to pay for the work as it was progressing and when it was completed.

This case also differs from that of the county of Web-

ster, reported in 64 *Ga.*, 498, in that the case there was that of a county, whilst this is a municipality, and the two turn on different paragraphs of the constitution, that being controlled by section 669 of the Supplemental Code, and this by section 670 of the same Code, where the constitution of 1877 is set out in full.

It is true that in the county case in delivering the opinion I do also invoke the other clause of the constitution, and use expressions going to show that something like this—iron safes—to be paid for by taxes, is a debt in the sense of the constitution, but I say there that if the county had money legitimately drawn from other sources, it could pay for the safe. In this case this money will be in the treasury, legitimately put there by taxation for current and ordinary expenses—the prime necessity of a municipal government, a city hall and appurtenances; and I think that the constitutional prohibition against new debts does not cover such a case.

Therefore, and for the reasons amplified by Judge Speer, I concur in the opinion that the chancellor erred in granting the injunction against the levy of this tax to erect a city hall and other necessary rooms for the daily and ordinary use of the city government.

CRAWFORD, Justice, dissenting.

The city council of Rome passed a tax ordinance for 1881, in which, after providing that three-fourths of one per cent. be levied for the purpose of meeting the liabilities incurred under the act of 1876, it was further provided that a tax of three-eighths of one per cent. be levied "for current expenses for 1881, and for providing funds for the erection of a suitable building for police headquarters, council chamber, court room, clerk's office, townhall and Mountain City engine house."

The defendants in error filed a bill to enjoin the collection of so much of this tax as was to be appropriated to

the erection of the building named in said tax ordinance. They rested their right to an injunction upon the following grounds:    That the bonded debt of the city was more than ten per cent. on its taxable property ; that the mayor and council had no power to levy a tax for the purpose named without first obtaining the approval of two-thirds of the legal voters of the city for that purpose; that the city was prohibited by the act of 1876 from con tracting any other debt so long as the bonded indebted-ness was unpaid ; that whatsoever proportion of the three-eighths of one per cent. was to be used for the erection of the aforesaid building was in conflict with the seventh section of the seventh article of the constitution of 1877.

The answer of the defendant admitted the statements in the bill as to the amount of the debt and the taxable property of the city, but insisted that in view of the ne-cessity of the building, for a proper administration of the affairs of the city, and being incidental to the government thereof, and embraced within its ordinary expenses, that the tax of one-eighth of one per cent. had been levied for that purpose.

The chancellor enjoined the collection of the one eighth of the rate so levied, and that decision is alleged as error.

We find by the act of 1874 that the one-half of one per cent. is the maximum limit of taxation "for the ordinary current expenses" of all municipal governments in the state, except the city of Savannah.  By the act of 1876 the mayor and council were authorized and empowered to adjust and settle the bonded debt of the city and provide for its payment.   It was further provided that it should not be lawful for the said mayor and council " to contract any other debt, except for current expenses, so long as said bonds remain unpaid."

By the constitution of 1877 it is provided that no mu-nicipality shall incur any new debt, except for a tempo-rary loan to supply casual deficiencies of revenue, with-ut the assent of two-thirds of the qualified voters thereof,

The defendants in error rest their cause on these acts and the constitution, and it would seem that if English words could limit the right of taxation, that they certainly have the law as a shield between them and the exercise of a power beyond the limit.   But it is very doubtful whether human legislation can be so framed as to defy the inge‑nuity of man in reaching, by construction and implication, the right to collect and disburse the public revenues ille‑gally.

According to the act of 1874 it is unlawful for the mayor and council of Rome to levy or collect more than the one-half of one per cent. for the ordinary current ex‑penses of the corporation, except as by said act provided, which provision is by a two-thirds vote of the legal voters. That they have the authority to levy the maximum amount, does not carry with it the right to levy it, when only one-fourth of one per cent. is needed for such ex‑penses.   The exact sum needed is the limit of their right, and not a pepper-corn beyond.   If the whole be needed, then the whole may be levied; if that amount is insuffi‑cient, then they must go to the voters.

It is not logical to say that because the right exists to levy the whole amount, if necessary for the ordinary cur‑rent expenses, that the same right exists if not necessary.

It is however claimed on the argument that the words in the fourth section of the act, which are, " that if an additional fund is required by said corporation for inter‑nal improvements not herein provided for," are to be con‑strued as falling within the meaning of the ordinary cur‑rent expenses of the corporation, and that that fund may be swelled to the maximum limit to enable the city to engage in internal improvements.   To allow the exercise of so important a right as that of taxation upon so strained a construction of this act would be a grave judi‑cial error.   The more especially so, when we search the act in vain for any provision for internal improvements, except under the head of extraordinary expenses.

It is also further insisted that the objects for which this tax is to be levied, are *necessary*, and therefore properly embraced within the term "ordinary current expenses." ·

Authorities have been cited in support of this view, and the leading case from 13 Mass., 278-9, arose upon a tax levied to pay for the defence of the town of Fairhaven in 1814, during an open war between the United States · and Great Britain. The enemy were on the coast, in sight of the town, which was greatly exposed to their ravages, and they were laying waste and destroying the dwellings of the people on the coast, and the inhabitants of the town thought it necessary, and voted unanimously to raise the tax for the purposes of the defence, the plaintiff himself not, however, being present at the meeting. The court held that tax illegal and unauthorized. It was argued in that case as in this, that having the power to levy taxes for certain purposes, "and for other *necessary* charges arising within the same town," gave the right to levy it for this. The court ruled otherwise, although in the opinion, after deciding the tax illegal, they say that the erection of town halls and market houses *may* come under the term *necessary town charges*, but they did not so decide. The case before us is one where the authorities are limited to the *ordinary current expenses*—that is, the usual, customary, running, passing expenses of the city.

If the act of 1874 is not restrictive of this power by the mayor and council, it is to be remembered that in 1876 another act was passed authorizing them to adjust and settle their bonded indebtedness, that is, compromise with their creditors and execute new bonds. In this act it is declared that it shall not be lawful to contract any other debt *except for current expenses* so long as the bonds remain unpaid. The ordinary construction of this clause would be that the city should incur no other obligation to pay money except for the current expenses. But again it is said that contracting to construct these buildings is not creating a debt, if the city have the money. A debt

is that which one person owes to another, whether money, goods or services—something due.   It may be that whilst the bondholder has no right and could not legally object to such a construction of this act, the tax-payer might, as he was a party thereto, having rights, as well as liabilities thereunder, and could claim to hold the taxing power to *current expenses*.   He is the party seeking protection in this bill, and his appeal is not so much that a *new* debt shall not be created, as that the mayor and council shall be restrained from exceeding the limit of their power.

But over and above all this comes the constitution, and declares among other things that no county, municipal corporation or political division of the state shall incur any new debt, except for a temporary loan to supply casual deficiencies of revenue, without the assent of two-thirds of the qualified voters thereof.

It is admitted that *a new debt* could not be *incurred* except as above provided.   Then the question is, whether a city can levy a tax with which to pay a *future* liability that it could not legally incur.   If the right exists to make the contract, *the time when* the payment is to be made is wholly immaterial; it neither enlarges the power nor changes the nature of the liability.   It is the incurring a new debt, whether paid when the work is done, or five years thereafter; it is a *debt* from the making the bargain until paid, be that when it may.

To say that for *a new debt* to be incurred, with which to build a town hall, without first submitting it to the people, would be *unconstitutional*, and to say that the levy of a tax to build a town hall without submitting *that* to the people would be *constitutional*, does not seem to me to be either law or logic.   This provision in the constitution was to give the tax payers the right to say whether the *expenditure* should be made, and to require their assent before the taxes should be laid for such expenditure.

There was no error, in my judgment, in granting the injunction.