## BUTTS *et al. vs.* LITTLE *et al.*

1. For a county to contract for the erection of a building at a specified price, which is to be completed by a certain date, and payment for which is to be made as the work progresses, on estimates to be made by certain architects, less fifteen per cent, is in effect a contract to pay the price agreed on by the date of completion fixed; and where the amount thereof is more than can constitutionally be raised by taxation (without authority of the voters exhibited by an election) it is to incur a debt not authorized by such constitution.

2. The effect of article VII, section VII, paragraph I of the constitution of 1877, on the incurring of debts by towns or counties is as follows:

(*a.*) The debt incurred by them shall in no event exceed seven per cent. on the taxable property, except as stated below.

(*b.*) No new debt, even up to seven per cent., shall be incurred without the assent of two-thirds of the qualified voters at an election for that purpose to be held as may be required by law, except that a debt of not above one-fifth of one per cent may be made to meet casual deficiencies.

(*c.*) But any city whose debt did not exceed seven per cent on its taxable property might, under properly received authority, increase the debt three per cent.

(*d.*) The words "except as in this constitution provided for" in the early part of the section, refer to the otherwise inconsistent provisions further on in the same section.

Constitutional Law. Debtor and Creditor. County Matters. Before Judge POTTLE. Hancock County. At Chambers. December 12th, 1881.

Reported in the decision.

DuBIGNON & WHITFIELD, for the plaintiffs in error.

SEABORN REESE; F. L. LITTLE, for defendants.

SPEER, Justice.

Plaintiffs in error filed their bill for injunction, relief, etc , in Hancock superior court, against the defendants, alleging that they were tax payers in and of said county, that at the April term, 1880, of said superior court, the grand jury thereof recommended a levy of a tax of one-fifth of one per cent be levied on the taxable property of said county for the years 1880 and 1881, for the purpose of erecting a court-house for said county, not to exceed in value $10,000.00, and also by their action appointed the defendants in error to act in the premises as a committee to have said building erected. That said parties so appointed entered, in August, 1881, into a contract with one James Smith, contractor, for the construction of said

court-house, at a cost of $24,495.00.    It is further alleged, that this sum is extraordinary in amount, and not necessary to construct such a building as is suitable for the county. That the tax recommended by the grand jury of 1880 and 1881 will be wholly inadequate to discharge said sum of $24,495.00, and that after applying the taxes levied on the first day of October, 1882, the time specified for the completion of said contract, the large sum of $14,495.00 will remain unpaid, and for the payment of which no provision has been made.    That there are no surplus funds in the treasury of the county to pay said debt; nor any other means by which said debt can be paid, other than by levying a special tax therefor.    It is further alleged that a levy of one-fifth of one per cent on the value of the taxable property of said county will raise less than five thousand dollars, and the purpose for which said new debt was contracted not falling within the exception specified, and no election, therefore, being had as provided, is expressly prohibited in paragraph I, section VII, article VII, of the constitution of 1877.

The prayer is, that the contract made by the defendants be declared void, and they be enjoined from further prosecuting or proceeding with said building under the contract aforesaid.    That  Frank Little, the county judge, be enjoined from levying any further tax to meet the same, and the tax collector from collecting the same, and the county treasurer from paying out any funds, now in or that may come to his hands in settlement of said debt.

The answer of the defendants sets forth the action of the grand jury as set forth in the bill, but further answer that the grand jury, at the October term, 1880, concurring with the committee as to the inadequacy of the sum provided for by the previous grand jury, recommended a levy · of a tax of one-fifth of one per cent on the assessed value of the taxable property of Hancock county for the year 1882, and whatever further sum might be found necessary to complete the building, be raised by proper authority, and

instructing said committee at the earliest time practica-
ble to enter. upon the discharge of their duty. The an-
swer admits the making of the contract, its terms, etc.;
they claim that after levying and paying the taxes of one-
fifth of one per cent for the years 1880, 1881, 1882, as
recommended by the grand juries, there will remain a
small balance of the contract price for the court-house
unpaid, which can be easily discharged in a few years by
a continuation of said tax of one-fifth of one per cent on
the taxable property of said county.

On the hearing of the bill, and answer, the chancellor
refused the injunction; whereupon complainants excepted.

It is alleged by the bill and admitted by the answer,
that of the debt contracted by the building committee,
after the taxes of 1880, 1881 and 1882 have been levied
and collected, of one-fifth of one per cent for those years
to meet this contract, there will still remain a balance due
by said county to be provided for by future levies of one
fifth of one per cent on the taxable property of said county.
What the amount of this unpaid balance may be is
not stated in the answer, or even approximated. The
question submitted then is, whether this debt by this
contract can be incurred under the provisions of the con-
stitution cited.

Paragraph I, section VII, of article VII, of the consti-
tution declares: " The debt hereafter incurred by any
county, municipal corporation, or political division of this
state, except as in this constitution provided for, shall
never exceed seven per centum of the assessed value of
all the taxable property therein, and no such municipality
or division shall incur any new debt, except for a tempo-
rary loan or loans, to supply casual deficiencies of revenue,
not to exceed one-fifth of one per centum of the assessed
value of taxable property therein, without the assent of
two-thirds of the qualified voters thereof, at an election
for that purpose, to be held as may be prescribed by law ;
but any city, the debt of which does not exceed seven

per centum of the assessed value of the taxable property at the time of the adoption of this constitution, may be authorized by law to increase at any time the amount of said debt three per centum upon such assessed valuation."

The alleged and admitted facts of this record show that this building committee on the part of the county have, by contract with Smith, made an engagement for him to build a court-house for said county according to plans and specifications therein stated under the authority of the grand jury of said county, and finish and complete the same on or before the first day of October, 1882, for the sum of twenty-four thousand nine hundred and ninety-five dollars, the same to be paid for as the work progresses, on an estimate to be made by certain architects, less fifteen per cent. If said installments are not paid in five days on the estimates made, then the contractor may cease work and may demand twenty per cent on said installment, and work to be resumed as soon as said installment is paid. If the contractor fails to finish the work by first of October, 1882, then he is to pay on demand to the committee as rent, three hundred dollars for every month between the time appointed and time the work is completed.

This is a contract to pay (if the contractor carries out in good faith his contract) on the part of the county, $24,495.00 for a building, to be completed first of October, 1882; and to meet which they have levied taxes, and collected the sum of one-fifth of one per cent for the years 1880, 1881, amounting to about $10,000.00; and estimating the tax of 1882 at the same amount, as recommended by the grand jury, there will be a deficit when this work is done of nearly $10,000.00 under the contract as due by this county.

The question made by the plaintiffs is, that this debt so contracted for, is illegal and void under the constitution, and the execution of the same is sought to be enjoined.

Paragraph I, section VII, of article VII, has been con-

strued by this court three times—first, in the case of *Hudson vs. Mayor etc., of Marietta*, 64 *Ga.*, 286, in which this court held that, "the municipality has no authority, under the constitution of 1877, to incur a debt of $3,000.00, in order to exchange an old fire-engine for a steamer, until there has been an election held according to a law prescribing the manner thereof." Again, in the case of *Spann vs. The Board of Commissioners of Webster County*, and at this term, in the case of *Walsh vs. City of Augusta*. With the aid of the light of these decisions, let us analyze this paragraph and interpret its meaning. The substance of the paragraph is foreshadowed, in the preliminary or prefacing clause, in these words: "Debt of counties and cities not to exceed seven per cent."

The paragraph declares the debt "hereinafter incurred of any county, municipal corporation, or political division of this state, except as in this constitution provided, shall never exceed seven per centum of the assessed value of the taxable property."

There is, then, a further limitation prescribed as to incurring such new debt, even up to seven per cent. What is it? "No such county, municipality, etc., shall incur any new debt, except for temporary loan or loans to supply casual deficiencies of revenue, not to exceed one-fifth of one per cent. of the assessed value of the taxable property therein, without the assent of two-thirds of the qualified voters thereof, at an election for that purpose, to be held as may be prescribed by law."

First: We have, then, the absolute prohibition against a county incurring any new debt exceeding seven per centum on its taxable property.

Second: We have a prohibition against a county incurring any debt (exceeding one-fifth of one per cent. to supply casual deficiencies of revenue) "without the assent of two-thirds of the voters, at an election for that purpose, to be held as may be prescribed by law."

The question, then, for our consideration is, does this

contract, entered into by these defendants in error, when consummated by the completion of the building, "create a debt against the county?" Is it a new debt incurred that "exceeds one-fifth of one per cent. of the assessed value of the taxable property therein?" The bill so charges, and the answer admits it to be true. How, then, can this contract be legal, that assumes to incur a new debt for the county (exceeding one-fifth of one per cent. on its taxable property), when the question of incurring this debt has not been submitted to a vote, with the two-thirds in its favor, at an election held for that purpose, as may be prescribed by law?

But it is insisted that the words in the paragraph under consideration, "except as in this constitution provided for," will relieve, and were intended to except new debts incurred for such purposes (such as public buildings, etc.,) as are mentioned in paragraph II, section VI, article VII of the same instrument. What is that section? Its preface is: "Counties—power to tax limited." It declares the "general assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes (in elementary branches), to build and repair the public buildings and bridges, to maintain and support prisoners, to pay jurors, coroners, and for litigation, quarantine, roads and expenses of courts, to support paupers, and pay debts heretofore existing."

It is quite clear this paragraph simply denies to the legislature the authority to delegate to counties the power to levy taxes for any purposes beyond those just above specified. The paragraph is not akin or germain to the paragraph following, and now under consideration. That paragraph is on the subject of taxation, and not on the subject of counties and cities incurring debts.

But to what do the words "except as in this constitution provided for" refer, it is asked, if they do not refer to the paragraph preceding? We find use for these words in the same paragraph. The paragraph opens with an absolute

prohibition against any county, city, etc., incurring a debt "exceeding seven per cent;" but in the latter part of the same paragraph it declares, "any city, the debt of which does not exceed seven per centum of the assessed value of the taxable property at the time of the adoption of the constitution, may be authorized by law to increase, at any time, the amount of said debt three per centum upon such valuation." Now the first prohibition against a county or city creating a new debt over seven per cent., would be inconsistent with the last clause of the same paragraph, were it not for the words "except as in this constitution provided for."

Suppose the city of Augusta owed a debt over seven per cent. on her taxable property, then she cannot incur a new debt; but suppose the city of Rome at the adoption of the constitution owed a debt of only six per cent. on her taxable property, then she may increase it three per cent. more, for the constitution clearly provides that any city the debt of which does not exceed seven per cent. at the time of the adoption of the constitution, may be authorized by law to increase at any time the amount of said debt three per centum. It, therefore, requires these words, "except as in the constitution provided," to harmonize the first and last clauses in the paragraph in which they occur. Otherwise these clauses would be inconsistent and irreconcilable. Our opinion is, therefore, that these words have no reference to the preceding paragraph, which relates alone to taxation. That the limitation upon the cities and counties to incur new debts are to be found in paragraph I, section VII, of article VII, and under it we hold:

1. That any city or county which at that time owed a debt which exceeded seven per cent. on the assessed value of her taxable property, could not increase that debt, only to the extent of one-fifth of one per cent. to provide for casual deficiencies of revenue.

2. That any city whose debt did not exceed seven per cent., might by authority of law and a vote of two-thirds

of her voters, add to this debt three per cent. upon the debt incurred, as well as levy, at her will, one-fifth of one per cent. to meet casual deficiencies of revenue.

3. But that, without reference to the debt, whether over or under seven per cent, neither county nor city can incur any debt for any purpose whatever exceeding one-fifth of one per cent. upon her taxable property to supply casual deficiencies of her revenue, unless she has authority of law for so doing, and the same is, in conformity to that law, submitted to a popular vote, and two-thirds of the qualified voters assent thereto.

With these views of constitutional limitations and restrictions, we must hold that this contract to build this court-house on the terms specified, is incurring a debt for the county of Hancock in a manner prohibited by the constitution, and the injunction asked for should have been granted.

We appreciate the importance of the interest involved, and the necessity there is for the proper administration of justice and the preservation of county records, that a suitable court-house should be erected, but we cannot override the constitution to meet the emergencies of particular cases. It is the supreme law, and we are bound to recognize and enforce its provisions when parties litigant seek its protection against illegal taxes threatened, or illegal contracts sought to be discharged by illegal levies hereafter to be made.

If the parties to this contract can so modify it that the cost of this building can, as it falls due, be met annually hereafter by a levy of one-fifth of one per cent. on the assessed value of the taxable property of said county, the injunction ordered may be altered so as to meet this modification; otherwise to incur or pay this debt sought to be incurred, application must be made to the law-making power, if none such now exists in this case, for permission to have an election, and with the assent of two-thirds of the qualified voters assenting thereto, the debt may be incurred and the house completed.

Let the judgment below be reversed unless the liability to be incurred shall be so arranged as not to exceed one-fifth of one per cent. annually on the assessed value of the taxable property of the county of Hancock; and in that event the judgment below stands affirmed.

Judgment reversed on terms.