# $\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Georgia,}$

## AT ATLANTA.

## OCTOBER TERM, 1885.

PRESENT—JAMES JACKSON, . . . . . . . . CHIEF JUSTICE.
SAMUEL HALL, . . . . . . . . . ASSOCIATE "
M. H. BLANDFORD, . . . . . . . . ASSOCIATE "

74 845,
o106 703
106 724
106 727
106 732

### CABANISS vs. HILL, ordinary.

1. Certain iron doors, cells, pipes for sewers; etc., were furnished to a county, under a contract which provided that the contractors agreed "to take and accept the sum of. $3,510 in warrants on county treasurer, payable on December 25, 1884, and bearing eight per cent interest after that date until paid, in full payment for said cells and wrought iron works." At the November term of the court of ordinary, orders were issued to "pay out of any money now being collected for new jail fund :"

Semble, that this contract created a new debt and was unconstitutional.

2. If the orders were not within the constitutional prohibition, by reason of being drawn on taxes already levied for the jail, yet where it appeared that the fund on which they were drawn was exhausted, the orders ceased to be of avail; if a debt remained, it was an unliquidated claim on an account, and a mandamus for the purpose of compelling the ordinary to levy a tax to pay the amount claimed by the holder of the orders, was properly refused.

(a.) To raise money by taxation is a high prerogative, and where fraud in the contract and failure of consideration are pleaded, the proof of the justice and legality of the claim should be equiv-

alent to a debt of record or the judgment of some court making it a debt of record, before a *mandamus* absolute to require the levy of a tax to pay such claim should be granted.

October 13, 1885.

County Matters.    Constitutional Law.    *Mandamus*. Before Judge ESTES.    Habersham County.    At Chambers. July 10, 1885.

Reported in the decision.

H. V. WASHINGTON, for plaintiff in error.

H. S. WEST; LOUIS DAVIS, for defendant.

JACKSON, Chief Justice.

This record presents the question, whether or not a *mandamus nisi* should be made absolute, to direct the ordinary of the county of Habersham to levy a tax upon the property-holders therein, to pay for certain iron doors, cells, pipes for sewers, etc., contracted to be paid for on the twenty-fifth of December, with interest, at eight per cent from that date, unless paid for then, the contract bearing date on the 30th of October, 1884.   The iron doors, cells, pipes, etc., were furnished for a new jail erected in said county.   A tax had been levied for the new jail, but the proceeds seem to have been exhausted.   The petition prayed for a *mandamus* to levy another tax for 1885, to pay for these articles and their erection or connecting them with the jail.   The amount was agreed to be paid in county orders, which were given by the ordinary, payable out of the new jail fund, which, as before stated, was exhausted before these orders were paid.

The judge denied the *mandamus* absolute, and the movant excepted.

1. The constitution of 1877 is very decided against the creation of any new debt by a county, and the first question meeting us here is this : Is this contract the creation

of a new debt in the sense of the constitution of 1877?

That constitution declares that "no such county, municipalities or division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one-fifth of one per centum of the assessed value of taxable property. therein, without the assent of two-thirds of the qualified voters thereof at an election," etc. Code, §5191.

This is not a temporary loan to supply deficiencies of revenue. The county borrowed no money, and the contractors loaned it none. The contract declares that the contractors agree "to take and accept the sum of thirty-five hundred and ten dollars in warrants on county treasurer, payable on December 25th, 1884, and bearing eight per cent interest after that date until paid, in full payment for said cells and wrought iron works."

At the November term of the court of ordinary, the orders were issued to "pay out of any money now being collected for new jail fund."

It seems to us pretty clear that this contract created a new debt. It is a contract in writing to pay for certain wrought iron work on the 25th of December next, after the date of the contract, on the 30th of October, and if not then paid, it provides for interest at eight per cent until paid. So that it appears to be a debt due the 25th of December, 1884, and if not then paid, interest is to be paid at eight per cent. It is not only a debt, but it is a debt to pay interest thereafter, if not punctually paid, at a higher interest than that it would bear but for the contract. It contracts a debt, and requires interest at an increased rate of interest if not paid when due.

In the ruling of this court in *Spann et al. vs. Webster County,* 64 *Ga.,* 500, this court say: "Besides, the purchase of these safes is the creation of a new debt since the adoption of the constitution of 1877, and is expressly prohibited by the first paragraph of the seventh section of article seven, "without the assent of two-

thirds of the qualified voters of the county at an election for that purpose to be held as may be prescribed by law.' No such election has been held, and a new debt, without its sanction, as a condition precedent, cannot be imposed. The prohibition is emphatic. 'And no such county, municipality or division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one-fifth of one per centum of the assessed value of taxable property therein,' without the sanction of such a vote." The court then go on to affirm by a unanimous bench the decision in *Hudson et al. vs. Mayor, etc., of Marietta,* wherein that city was prohibited from incurring a debt for a fire engine by two justices then sitting here. We make the long quotation from *Spann et al. vs. Webster County,* because the principle there ruled, touching the iron safes, covers the wrought iron work here, or if it does not completely fit this case, it comes nearly up to it, the only difference being iron safe to preserve county records in that case, whereas in this it is safe cells and wrought iron doors to keep prisoners. The one keeps prisoners safe, the other land titles and court records. In that case, a debt was created for the safes, to pay which the tax was levied; in this case, a debt is created for the iron works about this jail; both were debts and not cash transactions. See also *Hudson et al. vs. Marietta,* 64 *Ga.,* 286.

The case at bar is stronger than the Webster county case, because interest is provided for delay of payment; thus making the contract itself show that both contracting parties doubted promptness of payment, and looked forward to the grant of further time, or the necessity of further time, in which to pay the debt. Moreover, the debt was put in the shape of orders upon the treasurer, payable at a future day and out of a fund to be raised by taxes not collected at the date of the contract. While this reasoning makes it rather clear that this contract makes a new debt in the sense of the constitution, and is within the

constitutional prohibition, unless sanctioned by a popular vote, we prefer to leave the point open.

2. But even if this contract does not create a debt, these orders were made payable only out of the proceeds of taxes for the new jail in the year 1884. So far as they show an acceptance of the work of the movants—a promise to pay the price fixed by contract if the work were satisfactory— these orders are on the treasurer, not to be paid out of any general fund or future levy of taxes, but out of a tax already levied for the jail into which the work was to go and of which it was to become a part; and it may be that this provision in the orders, as payable out of money in sight, already provided for, might be construed into a sort of cash arrangement, and not a debt in the sense of the constitution. If anything can save it from being a new debt, it is this arrangement to pay out of funds, not in the treasury, it is true, but on the way to it.

Yet this fund is exhausted, out of which alone the orders for the money could be paid. They make the debt owing to bearer. They alone authorize Cabaniss, this movant, to move for the *mandamus.* The only right he has is as bearer, and is by virtue of these orders. Are they not fruitless when the fund to pay them is gone? That out of which alone the treasurer is authorized to pay being exhausted, the orders are gone, exhausted too. True a debt may still exist, but it is on the account, a mere open, unliquidated account, an account not accepted as correct, not agreed to be paid except out of the particular fund, and not so far settled and fixed as to make *mandamus* the remedy to levy another tax to pay it. It may be, as insisted by plaintiff in error, that an order on the treasurer for money is equivalent to a judgment; but the judgment here, if it be a judgment, is *in rem;* it is payable out of a specific fund. When that cannot be reached, and the party seeks redress on the merits of his account, it ought to be made certain by a judgment of some tribunal before a court will compel its payment by taxation, by compel-

ling the ordinary to make the money by a tax. It is the highest sort of prerogative to raise money by taxation, and where fraud is charged in the making of the contract, when the iron, the pipes, the work is attacked in the answer to the *mandamus nisi*, as much of it worthless, and failure of consideration is thus pleaded, both fraud in procuring the job and failure to do it well being thus put in issue, and all these assertions in the answer are not put in issue before a jury as questions of fact, but passed upon by the judge as issues of law on all the pleadings, as true in fact on both sides, does the judge, on such issues of law, made before him by petition and answer, commit error in refusing to order the ordinary to tax the county to pay a debt thus unrecognized but disputed on such grounds as fraud and failure of consideration? Whether the bearer of the orders received them before due, does not appear. If he did, it would only be a claim on an exhausted fund which he received. If he has purchased the debt on account, then the equitable title alone is in him, and while he may use the name of the contractors, he takes the contract subject to their failures and fraud.

In view of the fact that the constitution guards so carefully the people of counties in this state from debts incurred without their assent by their officers, and restrains the levy of taxes to specific objects, and under tight restrictions, the courts should not force the taxing authorities of those counties to levy taxes to pay any dues, unless a clear case be made that the demand is just and due; and before such absolute *mandamus* as in effect imposes a tax which the regular county authorities refused to levy, the proof of its justice and its legality, and the amount due, should be equivalent to a debt of record or judgment of some court making such a debt of record. It may be, as plaintiff in error contends and cites authorities thereto, that orders on the treasurer by the ordinary are equivalent to such judgments; but these orders cannot be enforced, being narrowed to a single fund, and that gone, for pay-

ment. It is the equity behind them which may be recovered possibly, and that must be ascertained by a judgment of some court before *mandamus* absolute should be issued by the judge, invested with such high sovereign powers.

Judgment affirmed.