Lewis *et al. v.* Lofley *et al.*, commissioners.

1. Without the preliminary sanction of a popular vote as required by the constitution, the public authorities of a county cannot contract for the building of a court-house on the credit of the county for an amount in excess of funds in hand and the proceeds of taxation applicable to the object for the year in which the contract is made.

2. In so far as the case of *Butts et al.* v. *Little et al.*, 68 *Ga.* 272, either expressly or by implication conflicts with the foregoing adjudication, the same is overruled. The constitutional power to incur a debt for a temporary loan to supply casual deficiencies of revenue, cannot be construed as authority for incurring a debt, not for a loan of any kind, but for the erection of a court-house.

3. Whilst it might not necessarily be error to deny an injunction restraining the county authorities from incurring a debt which they have no power to create, yet where the judge expressly authorizes the making of an unconstitutional contract in lieu of the one he has enjoined, his decision, to this extent, should be overruled.
January 27, 1894.

Petition for injunction. Before Judge Fish. Macon county. At chambers, October 21, 1893.

Gustin, Guerry & Hall, for plaintiffs.

Allen Fort and Edwards & Greer, for defendants.

Simmons, Justice.

Lewis *et al.*, citizens and tax-payers of Macon county, brought their action against the commissioners of roads and revenues of that county, to enjoin them from proceeding further under a contract entered into on October 3d, 1893, by said commissioners with Wallen & Company of Alabama, as contractors, for the building of a new court-house for the county, petitioners alleging that the contract is in violation of paragraph 1 of section 7, art. 7 of the constitution (Code, §5191), in that it creates

an indebtedness of the county without the consent of
two thirds of the qualified voters.   The petition shows
that on September 5th, 1893, the defendants made their
assessment for the levy and collection of taxes for the
year, by which it appears that the amount to be collected
for public buildings is $4,295.92; that the amount in
the county treasury levied and collected for public build-
ings in former years is $604.44; that the amount unap-
propriated now in the treasury is only $5,000; and that
the contract in question provides for the construction
of the court-house at the price of $19,000 to be paid by
installments as the work progresses, except 25 per cent.,
which is payable 30 days after the completion of the
building, the same to be completed by October 1st, 1894;
that no election has been held authorizing any indebted-
ness to be contracted on behalf of the county; and that
the value of the whole taxable property of the county
is $2,020,315.   The commissioners demurred generally,
and answered admitting the making of the contract
but denying that it was illegal, and prayed that in the
event the court decided it to be illegal, they be allowed
to modify it.   Upon the hearing, the court enjoined the
defendants from proceeding under the contract com-
plained of, but at the same time ordered that " if the
parties to this contract can so modify it that, with the
means on hand, the cost of the building can, as it falls
due, be met annually hereafter by a levy of one fifth of
one per cent. on the assessed value of the taxable prop-
erty of said county, and the liability to be incurred can
be so arranged as not to exceed one fifth of one per cent.
annually on the assessed value of the taxable property
of the county of Macon, then and in that event the de-
fendants may proceed to have a court-house erected
under the terms of such modified contract, and this in-
junction shall not apply thereto."   To this order the
petitioners excepted, and claimed that any contract

made under it would be as obnoxious to the constitution as was the original contract.

We fully concur in this view. The constitutional provision referred to forbids any county to incur a debt without first submitting the matter to a popular vote, " except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of taxable property therein." The contract as it originally stood was clearly a contract to create a debt; and it requires little argument to demonstrate that if modified so as to conform to the judge's order, it would still be a contract to create a debt. The order does not contemplate that the building shall be paid for out of funds in hand and taxes levied during the year of the contract. The contract fixes a certain price for the building, and the order contemplates that the sum contracted for shall be paid by means of annual levies to be made during several successive years. The contract price, as we have seen, was $19,000; the fund in the treasury levied in former years for public buildings amounted to about $600, and public property which could be sold to meet this expense was valued at $3,000. It would therefore be necessary, in order to pay the contract price, to raise from other sources an additional sum of about $15,400. An annual levy of one fifth of one per cent., as allowed by the judge's order, would amount to about $4,000, the assessed value of taxable property in the county being about $2,000,000. So it would require several annual levies to meet the obligation imposed by the contract. It was argued that if both parties to the contract keep the covenants thereof, no debt would arise; that a debt would exist only on default of payment by the county. In our opinion, a sum of money due by certain and express agreement is a debt, within the meaning of this provision of the constitution; and the fact that it is

payable in annual installments does not render it any less a debt. The scheme of the constitution is to prohibit county and municipal authorities from incurring debts and pledging future taxes for their payment, without a vote of the people as therein prescribed. If the question is submitted to the people and they authorize it by a popular vote, then by the next paragraph of the constitution (Code, §5192), the future taxes are to be pledged, because it requires the authorities to provide for an assessment and levy of taxes sufficient to pay within thirty years the debt incurred. This shows that future taxes cannot be pledged without such a vote. To allow county authorities to make a contract for the erection of public buildings and to pay for them in installments by the levy of taxes for each year an installment is due, would, in our opinion, be a manifest violation of these paragraphs of the constitution.

It is due, however, to the learned judge who granted this order, to say that it conforms to a direction by the court in the case of *Butts* v. *Little*, 68 *Ga.* 272. In that case the contract in question was similar to the one before us, and the Supreme Court, reversing the judgment of the court below, held the contract void, but directed that if the liability to be incurred should be so arranged as not to exceed one fifth of one per cent. annually on the assessed value of the taxable property of the county, the judgment should stand affirmed. In the present case counsel for the plaintiff in error asked leave to review that decision, in so far as it authorized a contract of this kind; and leave was granted, as provided by the code. Upon a review of the case we are satisfied that the direction referred to was erroneous, and to that extent the decision then made is overruled. In other respects that decision is sound, and the reasoning of the court sustains the conclusion announced in the present case. The direction allowing the modification of the

contract seemed to be based on that part of the constitutional provision above quoted, which allows a county to incur a debt for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of taxable property therein.   We cannot conceive how a debt incurred for the building of a court-house can be regarded as a debt incurred "to supply casual deficiencies of revenue." The word " casual" means that which happens by accident or is brought about by an unknown cause; and we think the framers of the constitution, in using this language, meant some unforeseen or unexpected deficiency, or an insufficiency of funds to meet some unforeseen and necessary expense.   The record does not disclose such a contingency in this case.   On the contrary, it appears that the old court-house had been in bad repair and in a dangerous condition for several years.

There are two ways in which funds may be raised by the county authorities for the erection of public buildings; one is by taxation, the other by creating a debt authorized by a popular vote as required by the constitution.   Whenever the necessity arises, the county authorities, under section 502 of the code, have the power to levy an extra tax for this purpose, and may do so without a recommendation of the grand jury; and under section 503, if they fail to erect and repair county buildings when necessary, or to levy the tax provided for in . section 502, or levy an exorbitant tax, or levy one when unnecessary, their conduct may be reviewed by the judge of the superior court, by *mandamus* or injunction as the nature of the case may require, at the instance of any tax-payer of the county.   We see no reason, therefore, why the county authorities in this case may not levy a sufficient tax in one year to pay for the erection of a court-house, if the tax be not exorbitant; and if they can do this, no reason now occurs to us why they can-

not make a contract for its erection, the cost to be paid out of the taxes thus levied. If there are funds in the county treasury sufficient for the purpose, the county authorities may contract for its erection, payment to be made when the building is completed, or in installments as the work progresses. Or if taxes are levied or can legally be levied for the year, sufficient for the purpose, they may contract to pay for it out of such taxes although they are uncollected.

While it may not necessarily be error to deny an injunction restraining the county authorities from incurring a debt which they have no power to create, yet where the judge expressly authorizes the making of an unconstitutional contract in lieu of the one he has enjoined, his decision, to this extent, should be overruled; and the judgment in this case is *Reversed accordingly.*

Cited for plaintiffs in error: 64 *Ga.* 286; *Id.* 498; 67 *Ga.* 106; *Id.* 293; 74 *Ga.* 845; 84 *Ga.* 213; *Id.* 681; 89 *Ga.* 683.

Cited for defendants in error: 68 *Ga.* 277; 64 *Ga.* 498; *Id.* 286; 67 *Ga.* 106; 84 *Ga.* 681; 89 *Ga.* 683; 49 Am. Rep. 416; 88 Ind. 473; 27 Iowa, 227; 36 Iowa, 393; 42 Iowa, 614; 49 Iowa, 58; 98 Ill. 415; 17 N. Y. 110, 458; 1 Mass. 471; 37 Cal. 524; 15 Cal. 429; 27 Cal. 175; 1 Dill. Mun. Cor. §§88, 135.