## OFFICE SPECIALTY MANUF'G CO. v. COUNTY OF ELBERT.

(Circuit Court, N. D. Georgia. December 7, 1895.)

MUNICIPAL CORPORATIONS—INDEBTEDNESS—GEORGIA CONSTITUTION.

Under paragraph 1, § 7, art. 7, of the constitution of Georgia (which forbids any county or municipal corporation to incur debt in excess of 7 per cent. of the assessed value of the taxable property, and provides that no county or municipal corporation "shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one-fifth of one per centum" of such assessed value, without the assent of two-thirds of the qualified voters at an election), a contract made by a county for the purchase of supplies, to be paid for, one-half in 13 months,

and one-half a year later, no election to authorize any debt having been held, is invalid, and not binding on the county.

Glenn & Rountree, for plaintiff.
King & Spaulding and Mr. Tutt, for defendant.

NEWMAN, District Judge. This is a suit by the Office Specialty Manufacturing Company, a corporation of New York, against the county of Elbert, of this state and district, to recover damages for the breach of a contract made by the county commissioners of Elbert county with the plaintiff for furnishing certain compressing files and roller shelves to be placed in a new courthouse which was at the time of the contract being erected for said county. The contract was made on the 10th day of October, 1894, and the furniture was to be delivered on or before the 15th of November, 1894. The total amount of the contract price was $2,067; and it was to be paid, one half on or before December 30, 1895, and the remaining half on or before December 30, 1896, without interest.

Certain questions have been raised by the demurrer, and argued, as to whether these compressing files and roller shelves were fixtures; whether furnishing and putting up of the same comes within the term "building and repairing courthouses"; and also as to whether certain preliminaries which the statutes require have been complied with; and, further, as to whether or not it is necessary to set out in the declaration a compliance with all the prerequisites of the statutes for entering into a contract by a county, or whether they will be presumed. A discussion of these questions is rendered unnecessary by the view the court takes of the effect of this contract of certain provisions of the constitution of the state.

Paragraph 1, § 7, art. 7, of the constitution of Georgia, so far as material here, is as follows:

"The debt hereafter incurred by any county, municipal corporation, or political division of this state, except as in this constitution provided for, shall not exceed seven per centum of the assessed value of all the taxable property therein, and no such county municipalities, or division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one-fifth of one per centum of the assessed value of taxable property therein, without the assent of two-thirds of the qualified voters thereof, at an election for that purpose, to be held as may be prescribed by law."

This provision of the constitution has been before the supreme court of the state several times.

In the case of Hudson v. Mayor, etc., of Marietta, 64 Ga. 286, the city authorities had contracted for the exchange of an old engine for a new one, and incurred a debt of $3,000, and it was held that it could not be done.

In the case of Spann v. Commissioners, Id. 498, the first-named decision was affirmed.

In the case of Cabaniss v. Hill, 74 Ga. 845, the first headnote is as follows:

"Certain iron doors, cells, pipes for sewers, etc., were furnished to a county, under a contract which provided that the contractors agreed 'to take and accept the sum of $3,510 in warrants on county treasurer, payable on December

25, 1894, and bearing eight per cent. interest after that date until paid, in full payment for said cells and wrought-iron works.' At the November term of the court of ordinary, orders were issued to 'pay out of any money now being collected for new jail fund.' Semble, that this contract created a new debt, and was unconstitutional."

There is some question in this last case as to whether the contract was not for the payment of a debt out of the current revenue, and within the year in which the contract was made; but the court held that inasmuch as it provided that if the debt was not paid at maturity, to wit, on December 25th, it should bear interest at 8 per cent. (a higher rate than it should bear but for the contract), it was obnoxious to the constitutional provision.

The last case which I have seen, and to which my attention has been called, is Lewis v. Lofley, 92 Ga. 804, 19 S. E. 57. This case, while there were other questions involved in it not material here, clearly affirms and adheres to the doctrine announced in the former cases cited.

Under these decisions of the supreme court, construing the constitutional provision, which has been quoted, it is clear that this contract is invalid. The debt is made in October, 1894. The first payment is to be made in December, 1895, and the second in December, 1896. No county can incur any new debt under this constitutional provision except for a "temporary loan or loans to supply casual deficiencies of revenue * * * without the assent of two-thirds of the qualified voters thereof." It is not set out in the declaration, nor is it pretended here, that any such election has been held. This contract provides for the payment for this furniture in one and two years after it is delivered. It is clearly the creation of a new debt not in existence at the time of the adoption of the constitution of 1877. It is not to supply casual deficiencies of revenue for the current year, and it is not authorized by a proper vote of the county. So, it seems that the action of the county authorities was in violation of the clause of the constitution quoted, and is not binding on the county.

In the case of Claiborne Co. v. Brooks, 111 U. S. 400, 4 Sup. Ct. 489, the supreme court, in discussing this question, say:

"It is undoubtedly a question of local policy with each state what shall be the extent and character of the powers which its various political and municipal organizations shall possess; and the settled decision of its highest courts on this subject will be regarded as authoritative by the courts of the United States, for it is a question that relates to the internal constitution of the body politic of the state."

There can be no question of the correctness of the views above stated when tested by the decisions of the highest court of the state, and by what seems to be the settled construction of the constitution in this respect. The demurrer must be sustained, and the case dismissed.