## City of Pittsburgh *versus* Harrison.

1. The Act of January 6th 1864, which authorizes Councils of the City of Pittsburgh to improve the streets and assess the cost of improvements upon lot-owners, gives no specific property in the assessments to contractors, and in no sense does the statute make the city a stakeholder of unpaid assessments.

2. Undecided, whether the city is legally bound to pay assignments of parts of money due a contractor who has done work for the city.

3. A property holder has no set-off against the city's claim for an assessment, and in a suit for such assessment by the city the equities between the property owner and the contractor cannot be adjusted.   See City of Pittsburgh *v.* McKnight et al., *ante* 202.

October 7th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1879, No. 191.

Scire facias sur municipal claim, issued by the city of Pittsburgh against James Harrison, to recover the amount of an assessment on certain property fronting on Ridge avenue, for grading, curbing and paving said avenue.

Ridge avenue was graded and paved under the Act of January 6th 1864 (Pamph. L. 1131) and its several supplements, by virtue of an ordinance passed by the city councils, June 25th 1874, in pursuance of the petition of a majority of the property owners along the street, among whom was the defendant.   The contract for the work was given to S. R. Johnson on June 5th 1875, and the street was completed on October 25th 1876, and the municipal claim was filed on March 21st 1877.

The only defence was, that the defendant had received from Johnson, an assignment to himself and his brother of $1900, for work and material furnished in the grading of Ridge avenue, for which the assessment was made, and that "a credit should be given in this claim for defendant's interest in said sum—being half of said amount."

At the trial below, the plaintiff objected to the defendant being allowed to make this defence, as being a transaction between the defendant and third parties, not parties to the action.   The court overruled the objections of the plaintiff and admitted the evidence.

From the evidence thus admitted, it appeared that Johnson, not having sufficient funds to complete the contract, borrowed money for that purpose from one M. A. Sanner, to whom he gave, prior to October 23d 1875, several assignments of money coming to him under his contract.   These assignments amounted then to over $9000, and had been filed with the city controller, one of them for $6000, witnessed by John Harrison.   On October 23d 1875, having contracted with Harrison Bros., who were partners in the

stone business, for the curbstone for the street, he gave them as security for the work and materials to be furnished by them and for other indebtedness of Johnson to them, the following order, viz.:

"Pittsburgh, October 23d 1875.

R. M. Snodgrass, controller city of Pittsburgh, pay to the order of John and James Harrison, nineteen ($1919.53) hundred and nineteen dollars and fifth-three cents, and charge the same to me on account of grading, paving and curbing Ridge avenue.

S. R. JOHNSON."

Afterwards, on April 8th 1876, Johnson assigned all his right and title to the balance of his contract on Ridge avenue to M. A. Sanner, who by different assignments, running from January 10th 1876, to January 5th 1877, transferred all moneys coming to him under these assignments to W. W. Patrick and R. Patrick & Co., who on the strength of these assignments, advanced over $11,000 to Johnson to enable him to complete his contract. It appeared from the evidence that all this money was advanced to Johnson, and that none was paid by Patrick & Co. or W. W. Patrick, to M. A. Sanner. All the money that Sanner received was paid to him by the city from the amounts paid in on assessments. How much he had advanced to Johnson did not appear. The total contract price of the street was $18,081.81, and the cost to the contractor over $20,000.

The Harrisons refused to complete their contract, and they and Johnson disagreed in their testimony as to the quantity of curbstone furnished by them, and the amount owing by Johnston to them for those furnished.

About the time of the first assignment to W. W. Patrick, he was informed by Johnson that the order to John and James Harrison was given to them to secure them on their contract for curb-stone, and that he owed them about $400 then on the contract, and that they had refused to furnish any more stone. It was not claimed by either of the Harrisons that either of them had any agreement or understanding with Patrick in reference to Johnson's order in their favor or as to its payment or allowance. They claimed, however, that they should be allowed credit for the amount of it on their several assessments.

At the trial before White, J., " defendants proposed to prove by the witness, W. W. Patrick, that he claimed the funds to be collected in these cases, and all moneys due on the street, amounting to about $9500, by assignment subsequent to October 23d 1875; that before taking his assignment, he went to the office of the controller of the city of Pittsburgh, to see if there was any assignment of S. R. Johnson's contract, and was told of assignments to Sanner of between $8000 and $9000, and of the assignment to Harrisons of

[City of Pittsburgh *v.* Harrison.]

about $1900, and that witness is the substantial plaintiff in these cases. For the purpose of showing that the city of Pittsburgh recognised and accepted the order of October 23d 1875, and that witness took his assignment subject to the Harrison order."

Objected to by plaintiff for the reason that the evidence is immaterial and irrelevant; that, if admitted, it will not prove the facts proposed to be proved; that it would not prove an acceptance by the city; that neither the witness nor S. R. Johnson are parties to the record and questions between the defendant, and either or both of them, cannot be tried under the pleadings.

The court overruled the objections and admitted the evidence. (1st assignment of error.)

The fifth point of plaintiff was as follows:

"That in this case the jury cannot take into consideration any order or assignment by the contractor, and that any such order or assignment is no defence to the action of the plaintiff in this case."

The court answered: "Affirmed. It is no defence, but if it means that the equities between the contestants of the fund cannot be inquired into in these actions, it is refused. The city is merely a stakeholder or agent in collecting the money, and takes no part in the trial. The whole controversy has been between Patrick, as assignee of the contractor, and the defendants claiming a portion of the fund. I doubt not, that on notice from the city, Patrick could have been compelled to intervene for the protection of his rights. He has appeared and contested the defendant's claim. I have no doubt he is bound by the result; as assignee he can claim only the actual amount due on Johnson's contract. The credit allowed in these cases reduces the amount due on the contract, and binds him after notice."

In the general charge the court said: "This case is quite similar to the City of Pittsburgh *v.* Mrs. Denny, recently tried in this court [see preceding case of City of Pittsburgh *v.* McKnight et al.— Rep.], and I adopt my charge in that case as an exposition of the legal principles involved in this case.

"In these cases also, we have all the parties in interest in court, and they have been fully heard by their evidence and counsel. The city takes no active part in the controversy, because the only question at issue is, who is entitled to the fund? Mr. Patrick claims it all under his assignments from Sanner and Johnson. The defendants claim a part of it to be applied in part payment on their assessments.

"It is sufficient in these cases to instruct the jury as follows:

"1st. The order given by Johnson to the defendant, on the city controller, is not such an assignment of that amount of money due on his contract, by Johnson, as to give priority to the assignments of Sanner or Patrick.

[City of Pittsburgh *v.* Harrison.]

" 2d. The leaving of that order with the city controller, and his making a memorandum thereof, is not an acceptance of the order by the city ; nor is all the evidence in this case sufficient to establish an acceptance by the city, so as to bind the city to apply the amount of the order in payment of the assessment of defendant.

" 3d. The only ground upon which defendant can claim a portion of the fund as against Patrick, is Patrick's consent or agreement that they should be first paid. If he took his assignments with knowledge of his claim, and expressly agreed or consented to take the assignments subject to his .claim, or any portion, he cannot now repudiate that arrangement.

" He admits he knew of the order, and he admits that he took the assignments, subject to a part of it, and was willing they should receive that part. But there is a dispute as to how much, and that is the only question for the jury. The defendant contends that $1224.07 of the amount of the order was on account of stone and work on Ridge street, furnished by them. This is denied by Patrick, and he also contends that he consented only to the allowance of a much smaller amount. The jury will take into consideration all the evidence, and determine,

" 1st. Whether Patrick agreed to allow the whole amount of the order, or

" 2d. Whether he agreed to allow all that was justly coming to them on account of work and materials on the street, or

" 3d. Whether he agreed to allow a specific sum, or not more than a specific amount; and the sum thus ascertained by the jury should be allowed as a credit on the defendant's assignments.

" The verdict will be for the amount of the city lien with interest, subject to a credit for the amount to be allowed, the same to be charged against the contractor in his contract with the city."

The jury rendered the following verdict : " We find for the plaintiff the amount of the lien with interest and attorney's commissions, to wit, $1235.32, subject to a reduction of $718.08, which is to be credited as part payment thereof, and for the sum thus to be deducted, the city is entitled to a credit on the contract of S. R. Johnson, for the grading, &c., of Ridge avenue."

Judgment was entered on this verdict, when the city took this writ, alleging that the court erred in admitting the above evidence, in the answer to plaintiff's fifth point, and in the charge as above noted.

*W. W. Thomson, T. C. Lazear* and *Thomas S. Bigelow,* City Solicitor, for plaintiff in error.—The sixth section of the Act of 1864 authorizes the city to grade, pave streets and to levy and collect the cost and expenses thereof by assessments on the property

10 NORRIS—14

[City of Pittsburgh *v*. Harrison.]

abutting the portions thus improved. The act gives the contractor no claim on nor control over the assessments, and provides no special fund out of which he shall be paid. His claim against the city, for the price of work done under his contract, is the same as any other debt of the city, and may be paid by the city out of any funds it sees proper, whether raised from the assessments or by general taxation. The assessments are provided by the act, as a means whereby the city can reimburse itself for the cost and expense incurred by it in improving the street. Whether the city does or does not collect the cost and expenses from the adjoining property makes no difference between it and the contractor, under the Act. He is equally entitled to recover the price for his work from the city. It has been held in many cases similar to this, that the contractor is not a substantial or equitable party to an action of the city for the collection of street assessments: Schenley *v.* Allegheny City, 12 Casey 41, 51, 61; Dyer *v.* Barstow, 50 Cal. 652; Himmelmann *v.* Spanagle, 39 Id. 392; Emery *v.* San Francisco Gas Co., 28 Id. 345; Emery *v.* Bradford, 29 Id. 75; Nolan *v.* Reese, 32 Id. 484; Himmelmann *v.* Steiner, 38 Id. 175; Philadelphia *v.* Brooke, 31 P. F. Smith 25, 26; Fell *v.* Philadelphia, 31 Id. 73. If the contractor is not a substantial or equitable party to these proceedings, no one claiming through him can be.

Such an assessment is a tax, and not the subject of a set-off or counter-claim by the property owner: Commonwealth *v.* Woods, 8 Wright 115; Washington Avenue, 19 P. F. Smith 352; Himmelmann *v.* Spanagle, *supra*; Hutchinson *v.* Pittsburgh, 22 P. F. Smith 325; Himmelmann *v.* Hoadley, 44 Cal. 227; Himmelmann *v.* Reay, 38 Id. 165; Nolan *v.* Reese, 27 Id. 484; Bidwell *v.* Pittsburgh, 4 Norris 412; Pennock *v.* Hoover, 5 Rawle 316–7; Stroud *v.* Philadelphia, 11 P. F. Smith 257.

*H. C. Campbell* and *John S. Ferguson*, for defendant in error.— The city is a mere stakeholder. The contractor is claiming no part of the fund, and Patrick, who is claiming it, took his assignment with full knowledge of the fact of the existence of the order. Because it was not in form an assignment under the rulings of the court below, he escaped from accounting to us for $695, to which we were justly entitled. But the jury has found that he agreed to allow us the residue, $1225. Against that sum, it is fair to presume, he has protected himself in taking his assignment, and he is now seeking, through the intervention of the city, to realize it a second time.

Mr. Justice Trunkey delivered the opinion of the court, October 27th 1879.

The parties to this action are the City of Pittsburgh and James Harrison. Upon a municipal claim, a scire facias was issued, to

which the defendant pleaded payment with leave; and there was the issue. No agreement, no motion, no rule or order, no docket entry shows any other party in court, or that there was another issue to try. All through the trial, the plaintiff continually objecting, evidence was received and questions of fact submitted to the jury, only pertinent to an issue between the defendant and a stranger to the record, resulting in a material reduction of the plaintiff's claim against which there was no valid defence. How can such a course of action be sustained?

It was said in the charge of the court, " In these cases also, we have all the parties in interest in court, and they have been fully heard by their evidence and counsel. The city takes no active part in the controversy, because the only question at issue is, who is entitled to the fund? Mr. Patrick claims it all under his assignment from Sanner and Johnson. The defendants claim a part of it to be applied in part payment of their assessments." We do not question the verity of these statements—the plaintiff excepted and assigns them for error—the misfortune is, they are not of record, and there is nothing by which to amend. The record shows an active resistance by the plaintiff, the city, and the assent of nobody, except the defendant. The Act of 1864, which authorizes the councils to improve the streets and assess the costs of improvements upon lot owners, gives no specific property in the assessments to contractors. They are paid by the city; assessments are paid into the city treasury, as are other taxes. In no sense does the statute make the city a stakeholder of uncollected assessments and taxes, nor is it apparent that one who does work for the city has a right to assign the whole or any part of an unpaid assessment. Whether the city is legally bound to pay assignments of parts of money due a contractor, is a question not now before us. Appeals of Philadelphia, 5 Norris 179. But if the city was a mere stakeholder of the money sued for, and the claimants were in court and heard, the records should support the procedure. When equitable claims are adjudicated they should appear in some form, in the pleadings.

Confessedly the matter proved by the defendant was not a set-off against the plaintiff's claim. Were it contended otherwise the point has been decided. Hutchinson *v.* Pittsburgh, 22 P. F. Smith 320. Tested by what appears of record and the statute, the offer, to which the plaintiff objected, was impertinent and irrelevant; and we are compelled to sustain the first assignment of error. Of course no remark need be made in reference to the other assignments; they necessarily follow the first.

It is impossible to modify this judgment so it may stand. The verdict was for the amount of the claim, subject to a reduction of $718.08. That reduction cannot be rejected as surplusage, though all which follows could.

Judgment reversed and a *venire facias de novo* awarded.