## THE CARTERSVILLE WATER-WORKS COMPANY *v.* THE MAYOR AND ALDERMEN OF CARTERSVILLE.

1. As to the invalidity of the contract for a water supply running through a period of thirty years, this case is controlled by the ruling in *Cartersville Improvement, Gas & Water Co.* v. *Mayor, &c. of Cartersville*, just decided.
2. Under the facts in the record, there was no estoppel upon the municipal government in consequence of any prior adjudication.
3. There was no power to exempt the property of the water company from municipal taxation by contract, and the attempt to grant such exemption was not effectual. The company could neither take the exemption by way of gratuity, nor purchase it by way of commutation.
4. A creditor of a municipal corporation is not entitled to an injunction against the collection of his municipal taxes on the ground that the municipality is indebted to him and has in its treasury

v 89-44

a fund which could not legally be applied otherwise than by paying this debt, and which it refuses to pay until after the creditor discharges the claim against him for taxes.   There was no error in denying the injunction.                    *Judgment affirmed.*

August 1, 1892.

Municipal corporation.   Contract.   Taxation.   Estoppel.   Injunction.   Before Judge MADDOX.   Bartow county.   At chambers, March 25, 1892.

The petition of the Cartersville Water-Works Company against the Mayor and Aldermen of the City of Cartersville and the marshal of that city, prayed that they be enjoined from levying and collecting any city taxes from the plaintiff for the year 1891, or any other year for the first ten years after August 6, 1888.   To the denial of the injunction as prayed for, and to the refusal to grant an injunction on the terms proposed by the plaintiff's counsel at the hearing, exceptions were taken.   It appears that on August 6, 1888, the mayor, etc., made a contract with a certain water company whose rights were afterwards assigned to the plaintiff, by which, in consideration of $2,500 per annum, payable January 1st and July 1st, the water company undertook to erect a system of water-works and to supply with water, for fire purposes and the necessary demand for the fire department, fifty hydrants; "also to supply with water, for the payment of city license and taxes for the first ten years of this contract, two drinking fountains with quarter inch openings, of continual flow, for man and beast, at such places on the mains as designated by the council."   The term of this contract is for thirty years.   It is therein recited that should the legislature authorize the city to levy a tax known as the water-works tax, it shall be a special tax devoted alone to the purposes of the contract.   In 1891 the municipal authorities assessed for taxation the property of the water-works company, and issued an execution for $340

with costs, which was levied, November 3, 1891, on the plaintiff's water-tower and lot.

The petition for injunction alleges that the undertakings on the part of the water company were complied with; that on or before the 25th of October, 1889, it delivered the drinking fountains fully completed, equipped and in constant flow, to the mayor, etc., who by resolution of that date accepted the water-works, hydrants and fountains as fully completed and delivered according to the terms of the contract; that the drinking fountains were duly erected at the places selected for them by the mayor, etc., and have been kept in constant and continual flow ever since; that the supply of these two fountains is in no way necessary to the maintenance of the water-works or water supply to the hydrants required by the contract, nor are these fountains of any value to plaintiff, nor does it realize any income or profit from them, nor would they have been erected and supplied except for the purpose of paying city taxes which might become annually due thereafter; that by the terms of the contract it was the intention of the parties that these fountains so supplied were to be accepted in payment of taxes which would otherwise be payable in money alone, and that by the erection and maintenance of these fountains the plaintiff has paid all taxes which would otherwise be due the city. It is further alleged that as between the city and the plaintiff, the plaintiff's contention on this point is *res adjudicata*, for that on the 29th of October, 1889, F. M. Ford *et al.*, freeholders and tax-payers of that city, filed their petition in the superior court against the mayor, etc., and the present plaintiff, complaining of the contract because it is stipulated therein that the water company shall be relieved from city taxes for the first ten years for the furnishing by it of two drinking fountains as therein set forth, and praying that the contract be de-

creed void in all its parts; and the present plaintiff answering that petition denied that it was exempted from taxation, and insisted that under the contract it had paid its taxes for 1889, and would continue to pay them for each successive year by the erection and maintenance of the drinking fountains, which it had already erected and which were in daily and constant use; and the mayor, etc., united with the present plaintiff in the defence of the action of Ford *et al.*, employing able counsel for that purpose, and making separate answers sworn to by the mayor and all the aldermen, denying that it had exempted or attempted to exempt the water company from taxation, and insisting that the supplying of the two drinking fountains was intended by the contracting parties, and had been received by the city, as payment of taxes by the water company; and the issue thus formed was duly tried, the jury returned a verdict for the defendants, and the court thereupon decreed that the relief prayed for by the plaintiffs be denied and the prayers of the petition be refused, which verdict and decree stand unreversed and of force; wherefore the plaintiff insists that the city is now estopped by its own sworn pleadings and the verdict thereby procured, and is precluded from contending to the contrary effect. In pursuance of an act of the legislature approved in December, 1888, the city through its present mayor and aldermen, have assessed, levied and collected a special water tax for 1891, sufficient to pay the $1,250 due the plaintiff on January 1, 1892, which sum is in the city treasury, and is a special fund to be exclusively devoted to the payment of plaintiff. It is further alleged that the sale of the water-tower and lot would be destructive to the plaintiff's entire plant in which it has invested many thousands of dollars, and would involve it in a breach of its contract with the city and with its numerous private consumers, thus ex-

posing it to incalculable expense, litigation and damage; that it has in its possession in the city personalty of value far more than the amount of the tax execution, which it was given no opportunity to point out for levy; and that it would be inequitable to allow the city, after receiving the fountains and the water supply thereby furnished, to repudiate its duty to receive them according to its own standard of value and collect from the plaintiff the very sum which the fountains were furnished to pay, and it would be inequitable to allow it to sell the plaintiff's property to collect taxes, when there is in the city treasury a sum due the plaintiff largely more than the amount of tax claimed, which sum can be legally used for no purpose other than the payment of plaintiff. It is further shown that the bill for $1,250 due by the city for hydrant rental on January 1, 1892, was laid before the mayor, etc., on December 31, 1891, and payment requested, but instead of ordering the payment made the council refused to pay the bill or any part of it, unless the plaintiff would dismiss its present application for injunction, which was brought on the 28th of November, and allow the taxes claimed to be deducted from this bill, which the plaintiff refused to do. The city did pay to the plaintiff the $1,250 due for hydrant rental from January 1st to July 1st, 1891, on or about the latter date, when it became due.

The defendant demurred and answered, in brief, as follows: The pretended contract was entered into by the mayor and aldermen without having previously made provision for its payment. The question whether or not said debt should be incurred, was not submitted to the legally qualified voters of the city at an election held for that purpose, as required by the constitution and laws of Georgia; and the contract has no force and effect against the defendant. The mayor, etc. attempted thereby to bind itself and its successors to a given line

of policy in its government as to uniform license and
taxes to be assessed and levied against the plaintiff; but
the contract is invalid because it is contrary to public
policy and to the laws of the State.  The drinking foun-
tains were never turned over or put under the control of
the mayor and aldermen for the use of the public,
because Driggers, the general superintendent of the
plaintiff in charge of the water-works immediately pre-
ceding Campbell, the present superintendent, took abso-
lute control of the fountains and refused time and again
to allow citizens of Cartersville to go to the fountains
and get water therefrom in pitchers and buckets for
drinking purposes.  The mayor and aldermen have never
exercised any control whatever over the fountains and
have not felt authorized to do so.    The plaintiff's
water-tower, lots, pipes, etc., were assessed for taxation
for 1891, at $40,000, which assessment became final
after it was inspected by the mayor and aldermen,
and sufficient time given for the filing of objec-
tions by the plaintiff, none being filed; and after
completing the tax digest, the mayor and aldermen as-
sessed an *ad valorem* tax on all the taxable property in
the city of eighty-five one hundredths of one per cent.
This tax was not paid by the plaintiff when it became
due on October 15th, and the execution in question was
issued and levied.    On January 28, 1890, the mayor and
aldermen elected for that year adopted a resolution,
reciting that from the decision of the Supreme Court
they did not consider themselves bound by the action
and contract of the mayor and council for 1888 with the
plaintiff, and caused the plaintiff to be served with a
copy of this resolution on the next day.    The defendant
denies that the adjudication of the case of Ford *et al.*
has any binding force and effect against the defendant
in this suit.    There was no suit by the water-works
company against the present defendant, or by defendant

against the water-works company, in that record, and there was no privity between the plaintiffs in that suit and the defendant in this suit. There was no issue raised between the present plaintiff and the present defendant; they were both defendants, and no verdict and judgment were rendered on any issue joined by one of said corporations against the other; hence the judgment in that case is not *res adjudicata* here, although the question as to the validity of the contract may have been settled as against Ford *et al.*, the plaintiffs in that suit. On the other hand, on January 1, 1891, the present plaintiff filed its petition for injunction against the present defendant to enjoin the collection by the defendant of the city taxes assessed against the plaintiff for 1890, attaching as an exhibit the same contract now in question, and alleging that it had paid its taxes by furnishing the water through the two drinking fountains. The motion for injunction was fully heard by Judge Gober upon the petition, demurrer, answer and affidavits; and on January 22, 1891, the judge refused the injunction, to which ruling the plaintiff excepted, carrying the case to the Supreme Court where on March 6, 1891, it was adjudged that on motion the plaintiff in error be allowed to withdraw the case, and that the judgment of the court below stand affirmed; and the defendant says that this judgment is *res adjudicata* against the plaintiff as to its rights to enjoin the defendant from collecting municipal taxes, notwithstanding the existence of the contract, and pleads said judgment as a bar to the plaintiff's right to proceed in this case. The entire taxable property within the limits of the city in 1888 amounted to a little over $999,000, and less than $1,000,000, and yet the mayor and aldermen for that year attempted to fasten upon the city a debt for water and gas supply, of $112,500, $4,375 of which was to be paid annually. Of the tax assessed and levied against the property of the

plaintiff for 1891, twenty-five one hundredths of one per cent. was to defray the expenses of the public schools of the city, and the mayor and aldermen could not accept anything but money in payment of that part of the tax assessed. Twelve one hundredths of one per cent. was assessed to pay for water supply and fire protection, but it has not been collected; and if all the tax-payers were as loth to pay their taxes as the plaintiff, then this particular part of the city treasury would be empty. It is not alleged that the defendant is insolvent.

At the hearing appeared in evidence, in support of the contentions of the parties as to the effect of the adjudications in the two cases referred to in the pleadings, the petitions and answers in those two cases, together with the judgments rendered therein. It appears that on April 2, 1891, the mayor, etc. passed a resolution directing the city treasurer to pay to the water-works company $1,250, less the amount of taxes, principal and interest, which the city claimed for 1890 from the company, provided the company should first dismiss its bill to enjoin the collection of those taxes, and provided that this payment should not be construed as an admission by the city or the company that the taxes were or were not legally due, nor that the contract is or is not legally binding; the intention of the city being simply to pay for the water it had used, and the intention of the resolution being neither to concede nor deny the question of the binding force of the contract and the liability of the water-works company, nor to prejudice any right that company might have to sue the city for the taxes which the city was to retain out of the $1,250, and which it contended were legally due. Under this resolution the finance committee gave an order on the city treasurer for the payment to the water company of the balance after deducting the taxes for 1890 (which order was paid), and also directed the city treasurer to pass

from the water account to the general account the amount of those taxes. On July 2, 1891, the mayor, etc. adopted a resolution instructing the finance committee to settle the account due the water-works company for $1,250 rental of hydrants for six months ending June 30, 1891, but reciting that the account was paid under protest and with no purpose of ratifying any contract made by any former council with the water company. On July 6th, the city treasurer paid to the water company the amount covered by this resolution, taking a receipt which recites that " this settlement is made under and by authority of a resolution of mayor and aldermen, July 2, 1891." Following the signature it is stated that in signing this receipt the water company does not intend to waive any right to insist on the contract of August 6, 1888, which statement is signed like the receipt. There was testimony for the plaintiff that the two drinking fountains in question were erected by it October 25, 1889, on the public square of the city, and turned over to the city for the public use, and from that time they have been giving a full and continuous flow of water, and have been free to the use of the public and have been daily so used ; that Campbell became superintendent of the water company on August 22, 1890, since when neither that company nor its officers have interfered in any way to prevent any one from drinking from the fountains, nor have they controlled them, except on occasions when they were notified by the city authorities that the fountains had become clogged, whereupon the superintendent would go or send and have them cleaned out; that they have not interposed to prevent any one from carrying away water from these fountains since the date mentioned, for the reason that the superintendent has never seen or known of any one attempting to do so ; and that the terms " drinking fountains for man and beast" mean fountains at which man and beast may

drink, not from which water may be carried to be drunk or otherwise consumed elsewhere.

For the defendant there was testimony that the mayor and aldermen for 1891 had nothing to do with the drinking fountains, nor were they ever turned over to the city or put in its control by the plaintiff, nor did the mayor, etc. ever exercise any control over them, or in any way agree to accept the use of them in lieu of municipal taxes; that they are of very little public utility and value, not enough to justify the payment of any sum for them; that Driggers, the superintendent of the plaintiff preceding Campbell, did exercise control over them and refused to allow several persons to get water from them in pitchers and buckets, and on one occasion refused to allow the street boss of the city to carry water from them in buckets to some street hands that were in confinement and could not come to them, and in July, 1890, drove away two or three little boys who were getting water to drink with small cups or dippers, telling them they must not get water from there, and if he caught them at it again he would have them arrested; that one of the fountains became clogged in 1891, causing the ground to become muddy and disagreeable, whereupon one of the aldermen, for the purpose of having the nuisance abated, told the plaintiff's superintendent that he must fix it, etc. The city treasurer's books showed that on December 20, 1887, there was a balance on hand of $857.22; that the amount received during 1888, from all sources was $7,709.99, and that the total paid out was $8,109.55, leaving a cash balance in the treasury of $457.66. On December 29th, the city council passed a resolution declaring the contract of August 6, 1888, not to be legal and binding, and that if the water company desired to furnish water it must come forward and make a new contract, and that the city would not pay for any water furnished in 1892, unless the same was furnished

under such new contract, which resolution was served on the plaintiff's superintendent.

The plaintiff moved that the court pass the following order, which motion was denied, as before stated: It appears from the pleadings and evidence that the city has collected $1,250 by taxation authorized by the act of 1888, to pay for the water supply furnished the city by the plaintiff from July 1, 1891, to January 1, 1892. The plaintiff is willing to allow so much of this fund as equals the amount of taxes claimed from it by the city, to be converted from the special fund to the general fund raised by the city taxation, and that when so converted it may be used by the city as the general fund is allowed to be used, provided that said conversion shall not prejudice any right of the plaintiff to contend on the final hearing or elsewhere that it owes the city nothing for taxes of 1891, and that the city owes the plaintiff the full amount of the $1,250 and interest. It is therefore ordered that the injunction prayed for be granted to continue until the final hearing, and that the defendant be granted leave to convert the amount due on the tax *fi. fa.* from the special to the general fund, this to be done without prejudice to the right of the plaintiff to contend on the final hearing as above stated. This order giving the parties all the relief to which they are entitled on a preliminary hearing, the various legal questions raised by the pleadings are left for adjudication on the final hearing.

AKIN & HARRIS, for plaintiff.
· JAMES B. CONYERS, for defendant.