MERCANTILE TRUST & DEPOSIT CO. OF BALTIMORE v.
COLUMBUS WATERWORKS CO. et al.

(Circuit Court, N. D. Georgia, W. D.   November 20, 1903.)

No. 57.

1. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONTRACT CREATING MUNICIPAL INDEBTEDNESS.

A federal court will follow the law as established by the Supreme Court of the United States, that a contract by a city to pay an annual rental to a water company does not create an indebtedness of the city, within the meaning of a provision of the state Constitution which would render such an indebtedness illegal, where at the time of the making of the contract in dispute the law of the state had not been settled otherwise by its Supreme Court, although that court may have subsequently declared such contracts invalid.

2. MUNICIPAL CORPORATIONS—CONTRACT WITH WATER COMPANY—IMPAIRMENT.

A city, having power under the law of the state to provide for a supply of water for its inhabitants and for fire protection, may grant a franchise to a water company to use its streets, and may make a valid contract with such company for a supply of water for fire purposes for a term of years; and where it has made such grant and contract, and the company has acted thereon by constructing a system of waterworks, it cannot impair the same by directly revoking the grant, or indirectly by constructing works of its own and entering into competition with the company during the term; nor are the rights of the city in that respect enlarged by the fact that it undertook to grant an exclusive franchise, which it had no power to do.

3. SAME—PRELIMINARY INJUNCTION.

Although it appears that a water company has not in all respects met the requirements of its contract with a city, a preliminary injunction will be granted, at suit of its bondholders, to restrain the city from proceeding with the construction of waterworks to be operated in competition with those of the company until the rights of the parties can be determined on a final hearing, where such action by the city would be in violation of its contract with the company, and would, to a large extent, destroy the value of complainant's bonds, and where they have expended a large amount in improvements, and offer to expend sufficient in addition to render the service in all respects such as is required by the contract.

In Equity.   On motion for preliminary injunction.

On July 30, 1903, the Mercantile Trust & Deposit Company of Baltimore filed a bill in the Circuit Court against the city of Columbus, L. H. Chappell, mayor of said city, and the board of aldermen thereof, for the purpose of enjoining the city from constructing a waterworks system, and from disposing of an issue of $250,000 of municipal bonds authorized to be issued for that purpose under an ordinance of said city adopted September 14, 1902, and ratified by a vote of the qualified voters of the city at an election held on the 4th of December, 1902. The Columbus Waterworks Company was made a party defendant. A temporary restraining order was prayed for. The bill also asked for a decree declaring the validity of a contract between the city of Columbus and the Columbus Waterworks Company, and an enforcement of the same. The averments in the bill, as far as necessary to be herein stated, were that the complainant had on the 1st day of January, 1901, been constituted by the Columbus Waterworks Company as trustee for the holders of its bonds to the amount of $500,000, which had been issued to construct

¶ 1. State laws as rules of decision in federal courts, see notes to Griffin v. Overman Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

a system of waterworks in the city of Columbus under the then existing contract with said city; that the contract had been entered into on the 7th day of October, 1881, by the city of Columbus and Thomas R. White and his associates, who afterwards constituted the Columbus Waterworks Company; that on the 5th day of April, 1882, the city of Columbus was notified of the organization of said company, and by formal resolution assented to the transfer of said contract by White and his associates to the company, and under said contract the company had constructed the waterworks to completion; that on the 6th day of November, 1882, on the completion of said waterworks, and notice thereof to the city by the company, said city had accepted said works by formal action; that the contract had been entered into by the city with full knowledge and free assent of its inhabitants, and that public sentiment in favor thereof had been unanimous, and the question had not been submitted to the qualified voters of the city because the same was deemed unnecessary; that, from time to time since the completion of the work, additions and enlargements to the system had been made without protest on the part of the city or any of its citizens; that it was known at the time of the execution of said contract that the funds required to be expended for said system were to be raised by the issue of bonds on the part of the waterworks company, and that the rentals which the city of Columbus was to pay under the terms of the contract for water for its use would constitute the source from which the bondholders were to be paid interest on their bonds, and that the value of the bonds was based upon the validity of the contract, and that the same were issued on the faith thereof; that the mayor and council under said contract had granted to the waterworks company the exclusive privilege of operating waterworks in said city for a period of 30 years, or until a time when they might be purchased by the city. The bill charges that the city is estopped during said period from building or operating any waterworks system, and that the existing contract is of force; that the action of the city in its proposal to issue bonds and construct a waterworks system of its own was in effect to repudiate the existing contract, and destroy the value of the waterworks property, and thereby force the sale thereof to the city. The bill then charges that, by reason of the conduct of the city in the premises, the waterworks company had defaulted or was about to default upon the interest on its bonds, and on the 22d of December, 1902, complainant had been forced to file a bill for foreclosure of the mortgage which it held as trustee for the bondholders of the waterworks company to secure the said bonds, and that William S. Greene had been appointed receiver of said company, and is now in charge, under the order of the court, of all the property of the waterworks company in the city of Columbus, and had applied for permission to issue receiver's certificates for improvement of the same; that the act of the city in attempting a violation of its contract is a deprivation of the rights and property of the complainant, and of the bondholders represented by it, impairs the obligation of the contract, and is contrary to law.

On October 15, 1903, an amendment was filed wherein the complainant made certain offers as to the improvement of the waterworks system. A rule nisi was issued, requiring the defendant to show cause why an injunction pendente lite should not issue. The defendant answered and demurred. The answer admits the notice to the city from the waterworks company that the system had been completed in accordance with the contract, but objections were raised by the city that all the terms of the contract had not been complied with, and that only upon assurance on the part of the company that the system would be completed was the resolution of the city adopted, accepting the system, and it denies that the system was subsequently completed. It alleges a violation of the contract in many particulars, and denies that the works were constructed in accordance with the specifications and requirements thereof. It avers that the service of the waterworks company was inadequate, inefficient, and unsatisfactory. It admits the passage of the ordinance of 1902, and the election of December 4, 1902, authorizing the issuance of bonds for the purpose of constructing and operating a waterworks plant on the part of the city, but avers that the ordinance was predicated on the express declaration that the waterworks company had failed to comply with

its contract. It claims that the contract is executory, and that the waterworks company has failed to perform the conditions therein set out, and that by reason of this failure the city has been compelled to take steps to provide a water supply from some other source than that of the Columbus Waterworks Company for the city, and for that reason the ordinance referred to in complainant's bill was passed, and the election had. It admits that the waterworks company was placed in the hands of a receiver, and it is not controverted that at the time of this hearing the receiver was in control and management of the works, and, acting under the order of the court of March 7, 1903, had issued receiver's certificates for the improvement of the present system.

Joseph Packard, Louis F. Garrard, and Hall & Wimperly, for complainant.

T. T. Miller, J. H. Martin, and Ellis, Wimbish & Ellis, for defendant city of Columbus.

NEWMAN, District Judge. The present hearing of this case is on an application for injunction pendente lite. The matter has been fully and ably argued by counsel for the respective parties, and submitted.

The case should first be considered upon the legal questions involved. The most important of these questions is as to whether the contract between the city and the waterworks company created an indebtedness in violation of the Constitution of the state of Georgia, and in determining this, whether this court will follow the decisions of the Supreme Court of the state, or those of the Supreme Court of the United States. A recent case decided in this court (Trust Co. v. City of Dawson et al., 130 Fed. 152) is controlling, and should be followed so far as applicable. Certainly a contrary ruling will not be made until the final determination of that case by the Supreme Court of the United States, where it is now pending on appeal.

In the Dawson Case the report of the master stated this question in this way:

"It is insisted that the decision of the Supreme Court of Georgia declaring the invalidity of the contract will be regarded as conclusive in this forum, in deference to the rule that the federal courts will follow the construction given constitutions and statutes by the highest court of the state. The general rule is as stated, but it is subject to important limitation and exceptions. The federal court, in construing the meaning of a state statute as to what contract is contained therein, and whether the state has passed any law impairing its obligation, is not bound by previous decisions in state courts, except when they have been so long and so firmly established as to constitute a rule of property, but will decide independently whether there is a contract, and whether its obligation has been impaired."

After citing a number of authorities, and discussing them at some length, the special master, taking up the question of the state of the law in the courts of the United States, says:

"That such a contract does not create a debt is not an open question in this forum. Upon this point the case of Walla Walla v. Walla Walla Water Company, 172 U. S. 1 [19 Sup. Ct. 77], 43 L. Ed. 341, is conclusive. In that case the city obligated itself to pay the water company $1,500 annually in quarterly installments, for twenty-five years, for the use of water for fire purposes. The charter of the city limited the amount of indebtedness it could incur. The sum of the installments agreed to be paid for the period named would, if treated as a debt, cause the indebtedness of the city to exceed the

charter limitations. The court, after declaring that the weight of authority, as well as of reason, favors the construction that a municipal corporation may contract for a supply of water or gas, or like necessity, and may stipulate for the payment of an annual rental for the gas or water furnished each year, notwithstanding the aggregate of its rentals during the life of the contract may exceed the city's authorized indebtedness, says: 'There is a distinction between a debt and a contract for a future indebtedness to be incurred, provided the contracting party perform the agreement out of which the debt may arise. There is also a distinction between the latter case and one where an absolute debt is created at once, as by the issue of railway bonds or for the erection of a public improvement, though such debt be payable in the future by installments. In the one case the indebtedness is not created until the consideration has been furnished. In the other, the debt is created at once, the time of payment being only postponed. In the case under consideration the annual rental did not become an indebtedness, within the meaning of the charter, until the water appropriate to that year had been furnished. If the company had failed to furnish it, the rental would not have been payable at all; and, while the original contract provided for the creation of an indebtedness, it was only upon condition that the company performed its own obligation.' "

After some further discussion of the matter, the special master says:

"I conclude on this branch of the case that the contract in question did not create a debt, within the meaning of the Georgia Constitution."

The master discusses the effect and state of the decisions of the Supreme Court of the state at the time the Dawson contract was entered into, and cites among other cases that of Mayor of Rome v. McWilliams, 67 Ga. 106, decided at the September term, 1881, and also the case of Butts v. Little, 68 Ga. 272, also decided in 1881. He also cites some cases subsequent to the two cases named, decided prior to the making of the Dawson contract, in 1890, which were pertinent, probably, to the Dawson Case, but which are not pertinent here. The report of the special master then proceeds:

"The principle in these cases [from 1881 to 1890] was consistent with that declared in Rome v. McWilliams, 67 Ga. 106, and Butts v. Little, 68 Ga. 272, that the obligation to pay for work when and as it shall be performed in future, by an annual levy of taxes sufficient to meet the accruing installments, does not create an indebtedness, within the meaning of the Georgia Constitution. These cases certainly warrant the conclusion that, at the time the contract was entered into with the water company, contracts of that character had not been declared invalid by the Supreme Court of Georgia. Indeed, that court has deemed it necessary to overrule Butts v. Little (Lewis v. Lofley, 92 Ga. 804, [19 S. E. 57]; Dawson v. Waterworks Co., 106 Ga. 727, [32 S. E. 907]), and to overrule, qualify, or distinguish several of the other cases referred to in this report. It cannot, therefore, fairly be said that there was such a settled course of judicial decisions in Georgia on this question at the time of the making of the contract as to constrain the courts of the United States to follow later decisions of the state court, especially in a case where the rights of innocent third persons are concerned. Subsequent to the making of this contract, and after the rights of the complainant and the bondholders had been acquired, the Supreme Court of Georgia unequivocally held that contracts of this character constituted the creation of an indebtedness within the inhibition of the state Constitution. Cartersville Imp. Co. v. Cartersville, 89 Ga. 683 [16 S. E. 25]; Cartersville Water Co. v. Cartersville, 89 Ga. 689 [16 S. E. 70]; City of Dawson v. Dawson Waterworks Co., 106 Ga. 696 [32 S. E. 907]. I therefore conclude that this court is not bound to follow the later decisions of the state court as to the validity of the contract in question, but should exercise its independent judgment with reference thereto."

From these citations it will be seen that the decisions of the Supreme Court of the state were quite as favorable to the validity of the contract in this case as they were at the time of the contract in the Dawson Case. If in that respect there is any distinction in the two cases, it is favorable to the complainants here.

Another question involved here on the law of the case is as to the power of the city to make this contract, and also as to the effect against the city when made. On this question in the report of the master in the Dawson Case the following is said:

"It is contended on the part of the city that no exclusive franchise to occupy the streets and maintain a water system could be lawfully granted, and from this it is argued that the franchise may be revoked and the city may use its streets for its own system. The grant of a right to supply water to a city and its inhabitants through pipes and mains laid in the streets, upon the condition of the performance of its service by the grantee, is a grant of a franchise in consideration of the performance of a public service, and, after performance by the grantee, is a contract protected by the Constitution of the United States. Walla Walla v. Walla Walla Water Company, 172 U. S. 1 [19 Sup. Ct. 77], 43 L. Ed. 341, and cases there cited. The right of a city to do those things necessary to supply its inhabitants with water for domestic use, or to provide the city with protection against fire, is the settled law of Georgia. Dawson v. Dawson Waterworks, 106 Ga. 709 [32 S. E. 907]; Frederick v. Augusta, 5 Ga. 561; Rome v. Cabot, 28 Ga. 50; Wells v. Atlanta, 43 Ga. 67. As incident to the principal undertaking, the city possesses the power to grant the use of its streets, and to contract with a private company for an exclusive supply of water for fire protection. It is unnecessary to decide whether the city may grant an exclusive franchise for a long number of years in excess of the contractual period between the city and the water company. Should a third person in good faith seek a franchise for the use of the streets for a similar purpose, the point would be properly involved. The question now presented is whether the city can directly revoke the grant, or itself use the streets in competition with the water company, in the face of its contract with the water company. The contract does not in terms express an agreement that the city will not, during the life of the contract, erect its own system for the purpose of supplying its inhabitants with water, but it can hardly be doubted that such is the fair implication and reasonable intendment of the contract. The city, having induced the expenditure of money on faith of the promise that it would grant the exclusive use of the streets for the laying of pipes and mains by the water company, and having contracted to pay for the use of water for fire protection for a term of years, will not be permitted in equity to disregard its agreements by itself entering into ruinous competition with the other party before the expiration of the contractual term. Southwest Missouri Light Co. v. City of Joplin (C. C.) 101 Fed. 23; Walla Walla v. Walla Walla Water Co., 172 U. S. 1 [19 Sup. Ct. 77], 43 L. Ed. 341. I conclude that the city may not, prior to the expiration of the term for which it contracted for a supply of water for fire protection, directly revoke the grant of the franchise for the use of its streets by the water company, or indirectly impair or destroy the value of the franchise by itself entering into competition with its grantee. To this extent the right is protected by the obligation of the contract entered into. St. Tammany Water Co. v. New Orleans Water Co., 120 U. S. 64 [7 Sup. Ct. 405], 30 L. Ed. 563; Louisville Gas Co. v. Citizens' Gas Co., 115 U. S. 683 [6 Sup. Ct. 265], 29 L. Ed. 510; Bartholomew v. City of Austin, 85 Fed. 359 [29 C. C. A. 568]."

The applicability of the language used by the master to the facts of this case is so apparent that it need not be discussed.

As the report of the master in the Dawson Case was in all things approved and confirmed in the Circuit Court, it follows, of course, that the conclusion of law reached was satisfactory and met the full

approval of the court, and was, in effect, adopted as the law of that case. For that reason the quotations from the able report of the master have been given above.

On the facts of this case much evidence has been submitted by affidavits and by documents. This evidence has gone mainly to the issue made in the case as to whether there has been a compliance on the part of the waterworks company with the terms of its contract, and this relates to the original construction of the waterworks, and as to the character and quantity of water furnished the city and its inhabitants since its construction. It cannot be doubted that there was a very serious condition in Columbus, as to water supply, during part of the year 1902; and this condition, probably more than anything else, led to the action of the city which gave rise to the present controversy. There has been an earnest attempt on the part of the bondholders, acting through the trust company, complainant in this case, to remedy this condition, and it is not denied that its efforts have resulted in very great improvement in the quality of the water furnished. In an amendment to the bill on October 15, 1903, complainant submitted:

"That it is the purpose and desire of complainant and the bondholders of the Columbus Water Company, represented by complainant as trustee, to see that all proper and necessary steps are taken to furnish to the city of Columbus and its citizens an ample supply of pure and wholesome water and pressure in accordance with the contract, and, with the aid of this honorable court, to perform and cause to be performed all of the obligations assumed by the Columbus Waterworks under the contract mentioned and exhibited in the above-stated bill of complaint. Complainant shows the court that the bondholders, acting through their duly authorized bondholders' committee, have consented and authorized this complainant to offer on their behalf to the court to have the present and future income of the said waterworks applied, so far as may be necessary, to the betterment of said system, and to have such further receiver's certificates made and sold, as in the opinion of the court will be adequate to furnish to the city and its citizens an ample supply of pure and wholesome water, and adequate pressure for fire protection, in accordance with the terms and requirements of the contract, and to postpone the lien of the bonds to such receiver's certificates as the court may deem adequate and sufficient for the purpose; and complainant prays that a suitable reference be had, to ascertain the probable cost of such improvements as to the court may seem adequate and proper, and complainant prays that the court, through proper orders, will direct and require a specific performance both by the city of Columbus and the Columbus Waterworks Company of the mutual agreements, covenants, and obligations of the same contract. * * * If, upon reference being had, the court should determine that further improvements are requisite and necessary, complainant is ready and willing, and the bondholders of the said Columbus Waterworks Company consent and agree, that such additional improvements be made and paid for."

This is a very broad offer on behalf of the bondholders on whose behalf the trustee brings this bill. Their ability to comply with this offer has not been questioned. They have already expended in the filtration system, and otherwise improving the waterworks, an amount said to be $50,000. The amount of the bonded indebtedness is nearly $400,000. That this amount of indebtedness should be wiped out without careful investigation will hardly be claimed by any one. It is certainly due the bondholders, in view of their efforts to take up this contract with the waterworks company and comply with it, that

they should have a full and fair investigation before the property up-on which they must rely as security for their debt is destroyed. That the erection of another system of waterworks in the city of Columbus will go very far towards destroying the property is manifest. It is also due the city of Columbus that it should be allowed to show in the fullest manner its contention. The great importance of the matter to the city and its inhabitants requires this.

The contract between Thos. R. White and the city of Columbus, which subsequently became, by agreement of the mayor and council of the city of Columbus, a contract between the Columbus Waterworks Company and the city, provided that:

"The source of water supply shall be determined by Thomas R. White, he guaranteeing, however, that the supply of water both in quality and amount shall be wholesome, constant and amply sufficient to meet the wants of the City and private consumers for future and present requirements."

The city and its inhabitants are entitled under this contract to an abundant supply of wholesome water; and this, sufficient to meet the wants of the city as it increases in population and area. It is contended that this cannot be obtained from the present source of supply. The complainant proposes, as I understand it, to change this source of supply to one which is abundant and undoubted, and to do that immediately.

All the questions involved are serious and of the gravest importance, and they should not be disposed of on a preliminary hearing and ex parte affidavits. It is due both parties that testimony should be carefully taken by examination and cross-examination of witnesses. The case will be referred to a master for the purpose of a full investigation and report upon the questions of law and fact involved. In the meantime an injunction will be granted, restraining the city of Columbus from taking further steps towards the sale of its bonds for the erection of a system of waterworks of its own.