## Metzger's Petition.

*Tax sales — Payment of taxes — Overpayment — Set-off in subsequent years—Voluntary payment.*

1. A tax is not a debt in the ordinary sense of the word, and the right to demand the tax does not depend on the consent of the taxpayer.

2. Taxes are not the subject of set-off.

3. A taxpayer who has voluntarily paid taxes in excess of what is due cannot demand that the overpayment shall be set off against the taxes for the succeeding year.

4 If he makes such demand and is refused, and his property sold for the tax assessed which he refuses to pay, the tax sale is valid, and he cannot afterwards complain.

Petition for establishing title to land acquired by predecessors in title at a sale for unpaid taxes. C. P. Dauphin Co., Sept. T., 1925, No. 844.

*Metzger & Wickersham,* for petitioner; *H. A. Reinoehl,* contra.

HARGEST, P. J., July 1, 1926.—The petitioner in this case asks the court to adjudge and decree valid and indefeasible in her the title to certain land situate in the Borough of Royalton, in this county. An answer was filed and depositions taken, from which we find the following

*Facts.*

1. John McCreary was seized of the real estate specifically described in paragraph 5 of the petition filed in this case. He conveyed an undivided one-fourth interest therein to Elijah McCreary and a one-half interest therein to Adolphus Reinoehl and Charles H. Meily, leaving a one-fourth undivided interest remaining in himself. He died intestate Sept. 8, 1892.

2. The said John McCreary, Elijah McCreary, Adolphus Reinoehl and Charles H. Meily formed a partnership for the transaction of a sawmill business, under the name of McCreary & Company, and the said land was assessed for taxes in the name of McCreary & Company.

3. Elijah McCreary died intestate, seized of a one-quarter undivided interest in said property, on April 12, 1910.

4. The Treasurer of Dauphin County sold to D. S. Light, for $14, the said land as a whole as the property of McCreary & Company, on Aug. 2, 1920, for the unpaid taxes of 1917.

5. Within two years subsequent to Aug. 2, 1920, Mrs. A. J. Antrim, for herself and other parties interested as heirs of John McCreary, redeemed the one-fourth undivided interest in said land.

6. The Treasurer of Dauphin County executed and delivered his deed to D. S. Light, conveying the said three-fourths undivided interest in said property, which deed is recorded in Deed Book M, volume 20, page 576.

7. The said D. S. Light and Laura F. Light, his wife, by deed dated June 18, 1924, conveyed the undivided three-fourths interest to the petitioner, which deed is recorded in the office aforesaid in Deed Book M, volume 20, page 577.

8. In August, 1914, the same tract of land was sold by the county treasurer for taxes, and on July 5, 1916, within two years after the sale, it was redeemed by H. A. Reinoehl, of Lebanon. In redeeming said property, the said H. A. Reinoehl inquired of the county treasurer the amount of taxes due up to that time, to wit, July 5, 1916, and was advised that the amount was $228.57, which amount he paid.

9. The said amount of $228.57 included $150.57, which was legally assessable against the property in question, and $78, which was not assessed against said property, but against property of the McCreary estate.

10. When the said H. A. Reinoehl learned of the mistake, he notified the county treasurer thereof and demanded a return of the surplus payment of $78. This refund was refused because the money had been distributed— partly to the county, partly to the Borough of Royalton, and partly to the School District of the Borough of Royalton.

11. Thereupon the said H. A. Reinoehl requested a credit on future taxes which might be levied and assessed against McCreary & Company, but no official of the county promised or agreed to such credit or set-off against subsequent taxes.

12. On May 2, 1917, said H. A. Reinoehl sent a check for $6.05 to the tax collector of the Borough of Royalton to pay the taxes for the year 1917 on the property in question, but subsequently requested the tax collector to return the check and received back $5.85. The difference of twenty cents was not accounted for. He made no subsequent effort to pay the tax for 1917, nor for any year thereafter.

### Discussion.

The petition in this case is based upon the Act of May 31, 1923, P. L. 477, which provides that in cases where land has been sold for unpaid taxes and not redeemed, the purchaser or his successor in title may present his petition, under oath, to the Court of Common Pleas of the county in which the land is situate, setting forth the requirements as contained in the said act of assembly, and thereupon a rule shall be granted upon all persons who have or claim any right in said land to show cause why the title of the petitioner to said land should not be adjudicated and decreed valid and indefeasible as against all rights and claims whatsoever. The proceeding set out in the act has been followed in this case.

The question now arises as to whether the overpayment by H. A. Reinoehl of the tax of 1916 and his request that such overpayment should be a credit or set-off against future taxes makes the sale of the property by the county treasurer for the tax of 1917 invalid.

A tax is not a debt in the ordinary sense of that term, and the right to demand the tax does not depend on the consent of the taxpayer. There is no express or implied contract to pay taxes. The levy of a tax is an act of government: 1 Cooley on Taxation (4th ed.), pars. 22 and 23. If the 1917 tax is invalid, it must be because H. A. Reinoehl had a right to demand that his overpayment of the 1916 tax be set off against future taxes. But it has been universally held that taxes "are not the subject of set-off, either on behalf of the state or the municipality for which they are imposed, or of the collector, or on behalf of the person taxed, as against such state, municipality or collector:" 1 Cooley on Taxation (4th ed.), par. 22; 34 Cyc., "Taxation," 656.

In McCracken v. Elder, 34 Pa. 239, 240, the Supreme Court said: "We are not prepared to admit that a taxpayer can interpose a claim of set-off against the collection of taxes assessed upon him:" Com. v. Mahon, 12 Pa. Superior Ct. 616.

In Bindley v. Pittsburgh, 64 Pa. Superior Ct. 371, 377, the court said: "'It is almost universally held that, in an action for taxes, set-off of an indebtedness of the state or municipality to the tax debtor will not be allowed, the statutes of set-off being construed in the light of public policy as not allowing the remedy in proceedings for this purpose, nor is such a claim subject to compensation:' 34 Cyc., 565. The same should be true as to municipal liens for improvements. It can readily be seen how a defence such as here proposed, in a proceeding depending on statute, with an appropriation of funds for a specific amount by a legal body from money usually secured by an issue of bonds as the basis of its action, might involve the city in many collateral questions which would work a great injustice to and seriously interfere with its rights. The city depends on the amount realized from the bonds and the assessments due from property owners to pay for the improvement. This money could not be diverted by the city, and it must be if this defence were allowed: Major v. Aldan Borough, 209 Pa. 247; Pittsburgh v. Harrison, 91 Pa. 206; Brientnall v. Philadelphia, to use, 103 Pa. 156; Erie City v. Butler, 120 Pa. 374. If the city owed several months' rent this could not be used as a set-off to a lien for taxes: McCracken v. Elder, 34 Pa. 239; Hopper v. Pittsburgh, 5 Pa. Superior Ct. 41, 45; Tagg v. Bowman, 99 Pa. 376, 379. Nor should it be to a lien for municipal improvements." See, also, City of Enterprise v. Rawls (Ala.), 11 Am. Law Reps. 1175; 86 So. Repr. 374.

In Scobey v Decatur County, 72 Ind. 552, it is distinctly held that "the county commissioners have no power to declare, even by express contract, a man's taxes paid before they were assessed, and certainly mere ministerial officers such as the treasurer and auditor would have no such authority."

In Shelton v. Blount County (Fla.), 81 So. Repr. 562, it was held that taxes collected for one year could not be applied as a credit on a fund to be accounted for by the tax collector for another year, and in New Orleans v. Davidson, 30 La. Ann. 541, 31 Am. Rep. 228, the court said: "Considerations of public policy require that a tax of one year should not be compensated by an overpayment of a previous year. The taxes of each year are levied to meet the exigencies of that year. If they could be reduced by the reduction of such sums as have been wrongfully demanded and paid, the revenues requisite for the support of government might be diminished so largely as to occasion public detriment."

In Cartersville Water Works Co. v. City of Cartersville, 89 Ga. 689, 16 S. E. Repr. 70, it is held that a taxpayer cannot require a fund in the city treasury due to him to be applied on the payment of his tax. See, also, Amey v. Shelby County, 114 U. S. 387; United States v. Pacific R. R. Co., 4 Dill. (U. S.) 71, 27 Fed. Cas. 399; McVeigh v. Lanier (Ark.), 8 S. W. Repr. 141.

From the foregoing authorities it appears beyond question that H. A. Heinoehl had no right to demand or expect that the overpayment of tax for 1916 should, at his request, be applied to the payment of taxes for the subsequent years, particularly in the absence of any agreement on the part of the taxing authorities so to do.

Moreover, the overpayment by Heinoehl must be considered a voluntary payment. It is the settled law of this State that a payment of taxes which are not due or of more than are due cannot be recovered where the payment is made without protest: Borough of Allentown v. Saeger, 20 Pa. 421; Taylor v. Board of Health, 31 Pa. 73; McCrickart v. City of Pittsburgh, 88 Pa. 133, 136. In the latter case it was held with reference to the overpayment that "the city had a right to consider the money as their own and deal with it accordingly."

In Peebles v. Pittsburgh, 101 Pa. 304, 310, it was held that even a payment under protest was to be considered a voluntary payment unless there was duress, restraint or compulsion, and that "a protest is of no avail except in the case of payment made under duress or coercion, and then only as evidence tending to show that the alleged payment was the result of duress."

We are, therefore, bound to conclude that H. A. Reinoehl has no authority to recover back the overpayment and could not require the application of it to the taxes for subsequent years. It follows that the county had the right to sell for the unpaid taxes of 1917, and, there being no legal obstacle to that sale, the title which passed as the result of the sale is valid and indefeasible.

We file herewith an order and decree confirming said title.

From Homer L. Kreider, Harrisburg, Pa.